SAMUEL J. STEWART *vs.* LAURA P. STEWART.

Penobscot. Opinion January 8, 1887.

*Divorce. Utter desertion.*

The court is not authorized to grant a divorce for "utter desertion" when there is only a refusal of marital intercourse.

ON exceptions.

Libel for divorce filed in the clerk's office December 3, 1885. It alleged that the libellee on the first day of December, 1882, " deserted the bed of your libellant and refused wholly to cohabit with your libellant, as man and wife and to occupy the same bed with him — but on said day left his bed, and on the 21st January, 1883, wholly deserted your libellant's home," and had continued such desertion ever since.

On the second day of the January term, 1886, the libellee filed a motion to dismiss on the ground that " it appears by said libel that she did not desert said libellant until January 21, 1883, that three years have not elapsed since said January 21, 1883, prior to suing out his said libel." Thereupon the presiding justice ordered the libel dismissed and the libellant alleged exceptions.

*Humphrey and Appleton*, for libellant.

The character of the desertion on and after January 21, 1883, will be conceded to be sufficiently "utter and continuous."

In *Bennett* v. *Bennett*, 43 Conn. 313, the court decide, that desertion in the marriage relation, consists in the breaking off of cohabitation, with a determination not to renew it. In this case the divorce was denied because though cohabitation had been broken off for a sufficient time, yet it had not been with the intent not to renew it, but from necessity. The court in their opinion say that, " for the purposes of this case it is sufficient to say that the offence of desertion consists in the cessation of cohabitation, coupled with the determination in the mind of the offending person not to renew it. This intent is the decisive characteristic ; mere separation may result from necessity."

In *Rie* v. *Rie*, 34 Ark. 37, the court decide that "actual cessation of cohabitation for one year on the part of the wife, which is intentional and without reasonable cause, entitles the husband to a divorce, though during the year she has visited his. house to visit the children, and engaged in domestic duties."

In *Morrison* v. *Morrison*, 20 Cal. 431, the court determine that " desertion as a cause of divorce consists in the cessation of matrimonial cohabitation and the intent to desert." And in

*Stein* v. *Stein*, 5 Colorado, 55, the court held precisely the same doctrine.

In *Bailey* v. *Bailey*, 21 Grat. (Va.) 43, the court hold that, " the abandonment which, under the laws of Virginia, entitles the party abandoned to a divorce, consists of an actual breaking off of matrimonial cohabitation with intent to abandon and desert."

In *Latham* v. *Latham*, 30 Grat. (Va.) 307, the court decide desertion to be first, the breaking off of the matrimonial cohabitation, and second, of an intention to desert in the mind of the offender, and that both of these must combine to make the desertion complete.

In *Sergent* v. *Sergent*, 33 N. J. Eq. 204, the court say, that to establish desertion, three things must be proved : first, cessation of cohabitation, second, an intention in the mind of the defendant to desert, and third, that the desertion was against the will of the complainant.

The court of New Hampshire in *Dyer* v. *Dyer*, 5 N. H. 271, in a forcible opinion hold the law to be as we claim it.

The only case we find, which seems to recognize a different doctrine is *Southwick* v. *Southwick*, 97 Mass. 327. The application for divorce in that case was based on the general statute of Mass. of 1860, c. 107, § 7. By that statute the sole cause of divorce is desertion, and the case referred to holds that desertion means the abandonment of all the duties and obligations connected with the married relation, the ancillary and subordinate duties as well as the chief and central element; matrimonial intercourse. But even this case is modified and greatly weakened by the case of *Magrath* v. *Magrath*, more recently decided by the same court and reported in 103 Mass. 577, where the court hold and decide that desertion may exist where there is a continued observance by the party deserting of some of the most important ancillary obligations.

The learned author in Bishop on Marriage and Divorce, remarks in relation to *Southwick* v. *Southwick*, that " looking at this question in the light of legal principle it becomes plain that if the result arrived at by the Massachusetts court is sound, it is for reasons that have not yet been judicially assigned.

"If then, not from any justifiable *causum* but wilfullness, or a desire to injure, or from malice, a married party takes a separate room in the house, and not as a mere temporary expedient, not on consideration of health, but as a wilfull, irrevocable act, abandons forever all matrimonial intercourse, the adjudged law, speaking through its principles, rather than by a resolving of the exact question, makes it desertion." 1 Bish. on Mar. & Div. §§ 778, 779. See Vol. 1, § 870 and note 1; also § 777, note 2, as to meaning of word cohabitation, and that it means matrimonial intercourse, or such living together as that matrimonial intercourse must be inferred.

*Charles Hamlin* and *J. Hutchings*, for the libellee.

EMERY, J. The power of the court to decree divorces, is derived solely from the statute. It has no common law jurisdiction over such matters. It can decree a divorce for such cause only as the legislature authorizes. The only statute authority relied upon in this case, is that clause authorizing the court to decree a divorce for "utter desertion continued for three consecutive years, next prior to the filing of the libel."

This case, therefore, presents the question whether the legislature, by that statute, intended to authorize a divorce where one party, without good cause, denies the other sexual intercourse for three consecutive years.

In England formerly, divorces were not allowed for desertion. The only remedy for such a wrong, was a suit in the Ecclesiastical courts for the restitution of conjugal rights. But, those courts, while requiring the offending party to return and live with the libellant, never undertook to compel the granting of sexual intercourse. They made a clear distinction between "marital intercourse," (sexual intercourse) and "marital cohabitation" (living together). The latter was a right to be enforced by the courts. The former was a right to be enforced only *in foro conscientiæ*. Lord STOWELL, in *Foster* v. *Foster*, 1 Hag. Con. 154, said, "the duty of matrimonial intercourse cannot be compelled by this court, though matrimonial cohabitation may." In *Orne* v. *Orne*, 2 Adams, 382, the precise question arose.

It was a libel by the wife for restitution of marital rights. It appeared that the husband lived with her in the same dwelling, but refused to have sexual intercourse with her. The libel was dismissed on the ground there was no power in the court to remedy such a refusal.

It was also early held in England that such refusal was not an act of cruelty. *Aguilar* v. *Aguilar*, 1 Haggard, 776. It has been held in America that such refusal is not an act of cruelty, and that it will not justify desertion, nor any other marital dereliction by the other party. *Reid* v. *Reid*, 24 N. J. Eq. 332; *Eshback* v. *Eshback*, 23 Pa. St. 343; *Cowles* v. *Cowles*, 112 Mass. 298. It has also been expressly held that such refusal is not the desertion contemplated by the statutes authorizing divorces for desertion. *Southwick* v. *Southwick*, 97 Mass. 327; *Steele* v. *Steele*, 1 McArthur (D. C.), 505.

Decisions are cited from the courts of some other states, which seem to hold the contrary doctrine. There is a difference between the statutes of those states, and our statute. Our statute uses the phrase, " utter desertion." The statutes upon which the opposing decisions are based, omit the word, utter. The language of our statute, enacted in 1883, is the same verbatim as that in the Massachusetts statute (Pub. Stats. of 1882, c. 143, § 1), which had already received judicial construction in *Southwick* v. *Southwick*, *supra*. The inference is, that our legislature in using the same language, intended the same construction.

Sexual intercourse is only one marital right or duty. There are many other important rights and duties. The obligations the parties assume to each other, and to society, are not dependent on this single one. Many of these obligations, fidelity, sobriety, kind treatment, &c., have legal sanctions, and can be enforced, or their breach remedied by legal process. This obligation in question is of a nature so personal and delicate, and dependent so much on sentiment and feeling, that the English Ecclesiastical courts, though reaching far into the privacy of domestic life, have stopped short of this. We do not think our legislature intended to call the denial of this one obligation an " utter desertion," while the party might be faithfully and

perhaps meritoriously fulfilling all the other marital obligations.

*Exceptions overruled.*

WALTON, DANFORTH and FOSTER, JJ., concurred.

HASKELL, J.   I concur in the opinion, as I understand it to hold that refusal of sexual intercourse does not amount to utter desertion, so long as other marital rights and duties are enjoyed and performed under the marital relation; and that, it is not of itself, in law, a cause for divorce; but that, whether from long continuance without cause, in extreme cases, it may not become "cruel and abusive treatment," is a question of fact, to be determined in each particular case, upon its own particular facts and circumstances.   *Holyoke* v. *Holyoke*, 78 Maine, 404.

PETERS, C. J.   I concur in the result arrived at by Judge EMERY, and agree to the statement that a refusal of marital intercourse, while marital cohabitation continues, does not amount to "utter desertion," a cause of divorce prescribed by our statutes.

But so far as the opinion of the learned Judge carries an implication that a refusal of marital intercourse may not be so extreme as to amount to "cruel and abusive treatment," another cause of divorce prescribed by our statutes of divorce, I do not concur.   Impotence is a cause of divorce in this State.   What is the difference to the husband, whether the wife *can not*, or *will not*, assent to marital intercourse?   If a divorce lies in the first case, *a fortiori* should it in the latter — when the case presents an inexcusable and long continued refusal — not such as this case — but a clearly extreme case.