REBECCA K. LAMBERT, Appellee, v. FRED. E. LAMBERT, Appellant.

**Divorce:** ADULTERY: EVIDENCE. The evidence in this action for divorce on the ground of the adultery of the husband is held sufficient to support a decree.

**Divorce:** ADULTERY: CONNIVANCE. The fact that plaintiff upon discovering defendant's adulterous relations with a domestic employed in the home, permitted her to remain for some days thereafter, was not such a connivance or consent as to defeat her action on the ground of adultery.

**Divorce:** DESERTION: EVIDENCE. Wilful desertion authorizing a decree of divorce on that ground includes the idea of actual withdrawal of all family relations with the deserted spouse, and complete separation of the parties for the statutory period. It is not sufficient that one duty or that all save one be neglected. Desertion for the statutory period is not shown in the instant case.

*Appeal from Polk District Court.*—HON. HUGH BRENNAN, Judge.

SATURDAY, MARCH 14, 1914.

ACTION for divorce. Decree for plaintiff, and defendant appeals.—*Affirmed.*

*Ira W. Anderson* and *C. O. Holly,* for appellant.

*Miller & Wallingford,* for appellee.

WEAVER, J.—The charge on which a divorce was sought was that of cruel and inhuman treatment and adultery. Defendant denies the charges so made, and pleads a very

extended history of his married life and domestic infelicities, and charges plaintiff with responsibility for all their troubles. He alleges that on five previous occasions the plaintiff sought a divorce from him, and he attaches as an exhibit to his answer a list of twenty-three different lawyers whom he alleges she has at different times employed or consulted for that purpose. He avers, in substance, that, prior to the beginning of this action, the plaintiff had deserted him without cause, and for a period of more than two years had refused to return to or live with him, thereby giving him good ground for a divorce, which he does not ask, but pleads the fact of such cause for divorce in his favor as reason in equity why plaintiff's prayer for relief should be denied. The trial court found that the charge of adultery had been proven, and that the counterclaim of desertion had no sufficient support in the evidence; and, if the record bears out this conclusion, plaintiff is of course entitled to the benefit of the decree in her favor.

The reasons set for by appellant's counsel for a reversal of that decree are as follows:

I. It is first said that the evidence is insufficient to sustain the charge of adultery.

Without going into unnecessary details, it may be said that the evidence tends to show that the defendant is a practicing physician occupying offices in a business block in Des Moines, Iowa. On a night in February, 1912,

1. DIVORCE: adultery: evidence.

one Mrs. Sloan, who claimed to have seen defendant accompanied by a woman go up the stairs to his office, reported the circumstance to plaintiff, whereupon she, with her twelve year old daughter and Mrs. Sloan and Lee Sloan, a young man of nineteen years, went to the office and found it locked. Plaintiff having a key opened one of the doors, and the invading party entering, and, displaying a light, found the defendant and a woman, both undressed, occupying a couch with which one of the office rooms was furnished. All four of the witnesses testify to these cir-

cumstances without material variation. The woman in the case was a domestic in the family home, and the wife and daughter testify to circumstances in the conduct of the defendant toward this woman tending to corroborate the allegation of their undue intimacy. The defendant denies the truth of the charge, but it is hardly too much to say that the overwhelming weight of the testimony is against him. If the charge is not true, then his wife and daughter and the two other persons testifying to the story have all deliberately perjured themselves. Neither their moral character nor reputation for truth or veracity is in any manner impeached, and there is nothing in the record to justify any such conclusion. There is no merit in the argument that the finding of the trial court is not sustained by the testimony. The matters relied upon as corroborating the defendant's denial go only to mere incidents, and not to controlling facts. They relate principally to the fact whether plaintiff's key would unlock the main door of the office, and whether the particular door by which she says she entered was not incumbered by boxes in the outer hall. Defendant himself testifies that the woman in the case also carried a key to the office, and it is argued that, if she was, in fact, in his rooms on that evening, the man, if any, with her must have been some other person than defendant, who swears that he was not there. The inference which appellant seeks to draw from this woman's possession of a key is much more difficult, and far less natural, than another which is more obvious and less helpful to the defense.

II. Counsel argue that, even if defendant did commit adultery, plaintiff connived at it, and sought to bring it about in order to have a ground for divorce.

2. DIVORCE:
   adultery:
   connivance.

There is nothing in the record on which such a finding can fairly be made. The facts mentioned by counsel and by defendant himself in his testimony that plaintiff was intensely jealous, that she objected to his professional relation with

woman patients, objected to his keeping an office girl, and on one or more occasions employed detective help to ascertain his actual conduct in these respects, tends strongly to discredit the charge of connivance or consent. The sole circumstance at all unfavorable to plaintiff at this juncture is that she permitted the alleged paramour of her husband to remain in the house for some days after the episode at the office. Reasons for this not discreditable to plaintiff may be inferred from the record, but, in any event, it is insufficient of itself to sustain the defendant's objection.

III. The proposition most confidently relied on in defendant's behalf is that plaintiff had, without just cause, deserted the defendant for more than two years prior to the alleged adultery, and she is therefore barred or estopped in equity to maintain this action.

3. DIVORCE: desertion: evidence.

Giving first attention to the question of fact, we are convinced that the charge of desertion made against plaintiff for a period of two years or more before this action was begun is not sustained by the record. We shall not attempt to recite or consider the detailed history of their fifteen years of married life. To put it mildly, it was not a continuous round of happiness. Most of the time their relations were hostile, and the intervals of peace were usually of the armed variety. On several occasions plaintiff left home and made unsuccessful efforts to secure a divorce upon the charge of cruel and inhuman treatment. Yet during all these unpleasant experiences it is to their mutual credit that their regard for their children seemed to act as a bond between them and served to prevent an irrevocable breach. They kept up quite an active correspondence during the periods of alleged desertion, which at times was redolent with the glow of love, and again gave off sparks of less romantic warmth. Each is a person of more than ordinary intelligence and education, blessed with an abundant command of language which they both know how to use with the sharp point fore-

most; but whether plaintiff or defendant is the more responsible for the domestic hell in which they lived up to February, 1912, we think it unnecessary for us to consider or decide. We may say that a very considerable part of the testimony presented by the defendant relates to what certain witnesses testified to on the trial of the former case and alleged statements or remarks or rulings of the trial court on such occasion, most of which is entirely incompetent as evidence, and none of it has any material bearing on the case. It does appear that, after plaintiff's failure to obtain a divorce, there was a reconciliation to some extent between the parties. They re-established a home, where plaintiff came and took charge and care of the children, the defendant paying the expenses, which arrangement, defendant says, was made upon the condition presented by plaintiff—that he himself was not to stay there. Subsequently in the year 1911, he testifies: "After the entry of Judge De Graff's decree, Mrs. Lambert retained her residence at the home on Twenty-Second street for a month or two; then she came to live at the new residence I had provided out at East Walnut. I had just completed a new home then, and she came there with the children. I had an arrangement with Mrs. Lambert, whereby, at her request to teach school, she was to occupy the home with the children from Friday evening to Monday morning. I was to be there and take care of the children between Monday morning and Friday evening, and I was to furnish a housekeeper for the care of the home during that time. I was to pay the housekeeper, and she was to choose her." He further says she refused to live with him and adds: "It was agreed that I would not bother her in that respect." He further admits that after her school was out he complained to her because she still remained in the home. He says: "I did complain of this, as I thought she was not keeping her agreement. She insisted on remaining in the house. That was my home and the children's home. We had a girl to do the housework. Mrs. Lambert superintended it. She stayed in my house at

my request as the mother of our children. It was an agree-
ment between us. I do not think she wanted to stay very
bad but she did.'' He repeatedly admits that she went to the
house he had prepared, that she went at his request, and re-
mained there taking care of their children up until the final
break in February, 1912. She also cooked the meals and did
his washing and mending. He ate his meals there at least
some of the time. The simple truth seems to be, and such
we think is his practical admission, that they lived together,
maintaining the usual relations of husband and wife, except
indulgence in intercourse. He says she refused him inter-
course, and this seems to be what he means when he denies
that they were living together. On her part, she concedes that
she had refused to maintain sexual relations with him or to
occupy his bed, but she says that during the last two years
he had never solicited such favor, except on a single occasion.

Taking the defendant's own showing, there was no de-
sertion. Certainly there was none for the statutory period of
two years. The denial of the marital right of intercourse
does not constitute desertion. *Pfannebecker v. Pfannebecker,*
133 Iowa, 425; *Kupka v. Kupka,* 132 Iowa, 191; *Snouffer v.
Snouffer,* 150 Iowa, 59. Eliminate this circumstance, and the
relation of this husband and wife did not differ materially
from that of hundreds of unwisely mated couples of more or
less incompatible temper and temperament, who manage to
maintain a common family home, though not a happy one.
Desertion within the meaning of the divorce statute is not
merely constructive. It must be actual, complete. The
statute itself furnishes a definition of its meaning where it
permits a divorce when the defendant ''willfully deserts'' the
plaintiff, and ''absents himself without reasonable cause for
the space of two years.'' Legal desertion necessarily includes
the idea of actual withdrawal from all family relations with
the deserted spouse. In the language of this court in the
*Pfannebecker* case *supra:* ''It is not sufficient that one duty
or that all save one be neglected. There must be a complete

separation of the parties by the one absenting himself or her-
self from the other.'' Accepting this definition as authorita-
tive, it is too clear to admit of any argument that no desertion
for the statutory period is shown in this case.

The alleged desertion not being proved, it is unnecessary
to consider or decide whether the fact, if proved, would have
prevented plaintiff obtaining a divorce on the ground of
defendant's adultery. No reason is shown for disturbing the
decree of the district court. Appellant's motion to strike
appellee's amended abstract is overruled. Costs of appeal are
taxed to appellant.

For the reasons stated, the decree appealed from is—
*Affirmed*.

LADD, C. J., and PRESTON and GAYNOR, JJ., concur.