## Wytheville.

### ROSA B. CHANDLER V. LEONARD L. CHANDLER.

June 15, 1922.

Absent, West, J.

1. DIVORCE—*Jurisdiction—Venue—Domicile—Residence.*—The juris-
diction of the courts of Virginia to grant divorces being a
special statutory and limited jurisdiction, the facts that the
plaintiff has been domiciled in Virginia for at least one year
next preceding the commencement of the suit for divorce; that
plaintiff was domiciled in Virginia at the time of bringing the
suit; that defendant was not a resident of Virginia; and that
plaintiff was a resident of the city or county in which the
suit was instituted, are jurisdictional under the provisions con-
tained in section 5105 of the Code of 1919, and do not concern
merely the venue.

2. DIVORCE—*Domicile of Plaintiff—Domicile of Origin.*—In the in-
stant case, as shown by the uncontroverted evidence, the domi-
cile of origin of the husband, the plaintiff, was in Virginia.
That fact of itself, when shown, was *prima facie,* and, hence,
sufficient evidence to establish the fact that the plaintiff's
domicile continued unchanged from his birth to the time of
suit, and so had been in Virginia, for more than one year prior
to the commencement of the suit; unless the abandonment of
that domicile by the acquisition of a new domicile of choice
affirmatively appeared from the evidence, and there was no
evidence tending to show that any of the essential requisites
for the acquisition of a domicile of choice by plaintiff existed.

3. DIVORCE—*Jurisdiction—Residence of Defendant—"Resident" and
"Domiciled" Distinguished—Case at Bar.*—Where plaintiff ex-
ercises the option given him by section 5105, Code of 1919, of
bringing a suit for divorce "in the  *  *  *  corporation of
the plaintiff's residence," the fact that defendant was not a
resident of the State of Virginia, being one of the conditions
upon which such option is given by the statute, becomes juris-
dictional. But "resident," as thus used, is to be distinguished
from "domiciled," and though the domicile of defendant might

be in Virginia, still if she occupied a separate place of abode in the city of Washington, she was not a resident of Virginia.

4. DOMICILE—*Residence Distinguished from Domicile—Meaning of Residence as used in Statutes of Limitations, Attachment and Divorce.*—A person's place of abode, or habitation, as contradistinguished from the place of mere transient, or, under some circumstances, even daily presence, for business or pleasure, is the place of one's residence within the meaning of the divorce statute section 5105 of the Code of 1919), as it is of statutes of limitations, attachment statutes, and the like. One may be domiciled in one State and be a resident of another, within the meaning of such statutes.

5. DIVORCE—*Desertion—Constructive Desertion—Denial of Sexual Intercourse—Case at Bar.*—In the instant case, the desertion which was the basis of the decree for divorce by the lower court was constructive desertion, consisting, in accordance with the preponderance of the evidence, in the willful withdrawal from the husband, without just cause, more than three years prior to suit, of the privilege of sexual intercourse, and the continuance of such withdrawal down to the time of suit, accompanied by gross neglect of the duties of a wife in respect to the keeping of her husband's room in a reasonable condition of cleanliness and comfort, and neglect in respect to the meals of the husband, such desertion being preceded by repeated and violent abuse of the husband, and repeated groundless charges of adultery. The wife did not leave the home of the husband until a few days before suit was instituted.

*Held:* That the decree of the lower court granting an absolute divorce on the ground of desertion would be affirmed.

6. DIVORCE—*Hearing Ore Tenus—Weight of Trial Court's Finding.*— In a divorce suit where all the testimony is heard *ore tenus* by the court below, which had the opportunity of observing the witnesses and their demeanor while testifying, the decision of the lower court upon the facts is entitled to great weight.

7. DIVORCE—*Desertion—Constructive Desertion—Denial of the Privilege of Sexual Intercourse.*—The willful withdrawal of the privilege of sexual intercourse, without just cause or excuse, constitutes willful desertion under section 5103 of the Code of 1919, when such withdrawal is accompanied with such willful breach and neglect of other marital duties as to practically destroy the home life in every true sense and to render the marriage state well-nigh intolerable and impossible to be endured. Such conduct, on the part either of husband or wife, is considered to be a general withdrawal from the duties of the marital relationship; and, if willfully done, without just

> cause or excuse, this, by the great weight of authority, constitutes willful desertion.

Appeal from a decree of the Corporation Court of the city of Alexandria in a suit for divorce. Decree for complainant. Defendant appeals.

*Affirmed.*

The decree under review granted the husband, the appellee, an absolute divorce, on the ground that the wife, the appellant, willfully deserted and abandoned him, without just cause or excuse, more than three years prior to, and continued such desertion for that period next preceding, the institution of the suit.

The suit was instituted by the husband on November 1, 1919, in the Corporation Court of Alexandria, Va.

The bill alleged willful desertion on the part of the wife in 1912, and since continued, as the ground for the absolute divorce sought. There was an answer and separate cross bill filed by the wife. The answer denied that the husband was a resident of the city of Alexandria at the time he brought the suit, and that he had had his domicile in the State of Virginia for one year next preceding the suit; stated that the wife resided in the city of Washington at the time of the suit, and denied the allegation of desertion contained in the bill. The cross bill contained the same denials and allegations as the answer on the subject of the residence and domicile of the husband and the residence of the wife, alleging that if the husband's domicile was in Virginia, so was the domicile of the wife; and alleged insufficient support, also cruelty, consisting of striking and beating "with the fist on many occasions" and, specifically, on a particular occasion mentioned in October, 1919, on the part of the husband; and prayed for a divorce from bed and board, for maintenance, alimony, etc.

There was testimony taken by both sides, most of it being heard *ore tenus* by the judge of the court below.

There were five children born of the marriage—a daughter, in January, 1901; twins, a boy and girl, in September, 1903; another child, in 1909, which lived only a few days, and another son, born in May, 1912. All of the children mentioned were living at the time of the suit, except the infant that died, as just stated.

There was no actual desertion of the husband on the part of the wife until a few days before the suit was instituted. According to the preponderance of the evidence, the wife did then leave the home of the husband, and rented and occupied a separate place of abode from the husband in the city of Washington, the exact location of which was unknown to the husband at the time he brought the suit, he merely knowing at the time of suit that she was living somewhere in that city. The desertion which was the basis of the decree under review was constructive desertion, consisting, in accordance with the preponderance of the evidence, in the willful withdrawal from the husband, without just cause or excuse, more than three years prior to suit, of the privilege of sexual intercourse, and the continuance of such withdrawal down to the time of suit, accompanied by gross neglect of the duties of a wife in attention to the keeping of the room of the husband and his bed in any reasonable condition of cleanliness or comfort, and neglect of such duties in respect to the meals of the husband. And, in accordance with the preponderance of the evidence, such desertion was preceded by repeated and violent abuse of the husband by the wife, accompanied by repeated charging of the husband with adultery, during a period of some twelve years prior to the three-year period antedating the suit, continuing up to the time of the desertion aforesaid, and afterwards, down to the time of suit, which charges were groundless, so far as disclosed by the

evidence, but which brought on repeated and innumerable quarrels between the parties during these long years, which embittered the lives of both and practically destroyed the existence of any real home more than three years before suit.

The evidence is voluminous, conflicting, distressing and revolting in many of its disclosures. It does not show that the husband was blameless—far from it. Indeed, there was much that was reprehensible in his conduct and which must be condemned. But there were extenuating circumstances in his favor, and none equally so in favor of the wife. Her misconduct appears to have been the inciting cause of the deplorable results which followed. It would serve no useful purpose to set forth the evidence in detail. It is deemed sufficient to say here that the clashes and quarrels frequently resulted in personal conflict, in which, on one occasion, soon after the marriage of the parties (which was in 1899), the husband, on being charged by the wife with being too intimate with another woman, lost control of himself, in his anger, and threw the wife across the bed and choked her. This, the wife testifies was the most violent assault the husband ever made upon her. In other subsequent quarrels, all brought on, as the wife practically admits in her testimony, by the wife's charging the husband with improper conduct, now with one, now with another suspected woman, the husband slapped the wife, as he admits in his testimony. In short, the result was a home—if it could be called a home—wrecked of all happiness and unfit for the proper upbringing of the children, many more than three years before suit. With respect to the beatings of the wife by the husband, the wife testified that: "They were vicious in his attitude. He never struck me very hard." The evidence as to nonsupport need not be further referred to than to say that it was conflicting. Moreover, the testimony of the wife discloses that she did

not leave the home when she did—a few days before the suit was brought—because of the nonsupport or the cruelty of conduct aforesaid on the part of the husband, but for other reasons, which are immaterial to the issues in this cause.

As bearing on the question of the jurisdiction of the court raised by the answer and cross bill, the uncontroverted facts shown by the evidence are as follows:

The husband was born in Petersburg, Va. He lived there until 1912, having been married there in 1899, as aforesaid. He registered and voted there, and never thereafter transferred his registration to or voted at any other place. About thirteen years after his marriage, being an agent for a life insurance company and having to travel in different sections of the country, he rented a house and located his family in Lynchburg, Va., coming home at intervals as his work permitted, until 1918, when, having been sent by the insurance company which employed him to the city of Washington to take charge of the work of the company there, he moved his family to that city on September 15, 1918, and lived there, in a rented house, until October 30th, when his wife having left his house, as aforesaid, he went over to Alexandria and rented a room, on October 31, 1918, taking with him one of the children (whom the wife refused to allow to stay with her at her aforesaid separate place of residence and had directed to go with his father), and the husband and son slept in this room at night from the last-named date until the latter part of December, 1918, shortly before Christmas, when he rented and occupied a room in Washington city.

Further.: The husband testified that he had never formed any intention of changing his domicile from Petersburg, Va.; that he had always regarded that as his home; that his business was such that his location at any place for any certain length of time was problematical;

that that was true also of his location in Washington city; that prior to the suit, he had claimed exemption from jury service in that city on the ground that his domicile was in Virginia, and the exemption had been allowed by the court in that city; that he was a *bona fide* resident of Alexandria on November 1, 1918, when this suit was instituted by him; that he rented the room, which he occupied there, as aforesaid, because his tenancy of the house he had previously rented and occupied with his family, in Washington, terminated October 31st, and because rents were so high at that time in that city. And there was other testimony of several witnesses, other than the husband, corroborating him with respect to the truth of the above statement of facts.

*T. Morris Wampler,* for the appellant.

*J. K. M. Norton,* for the appellee.

SIMS, J., after making the foregoing statement, delivered the following opinion of the court:

There are but two questions presented for our decision by the assignments of error—first, whether it appears from the record that the domicile and residence of the husband, the plaintiff, was such that the court had jurisdiction of the cause; and, second, whether there was sufficient evidence before the court below to establish the fact of the constructive desertion and accompanying circumstances relied on by the husband, and, if so, whether such desertion is ground for divorce in this State. These questions will be disposed of in their order as stated below.

1. Does it appear from the record that the husband, the plaintiff, had been domiciled in this State for at least one year next preceding the commencement of the suit; that he was domiciled in this State at the time of bringing

the suit; that the wife, the defendant, was not a resident of this State, and that the husband was a resident of the city of Alexandria (in which city the suit was instituted) at the time the suit was commenced?

This question must be answered in the affirmative.

[1] The jurisdiction of our courts to grant divorces being a special statutory and limited jurisdiction, all of the facts in question concern not merely the venue but are jurisdictional, under the provisions of the statute on the subject (contained in section 5105 of the Code—the amendment of the statute by subsequent act of Assembly not being in force when this suit was instituted). Lile's Eq. Pl. & Pr., secs. 399-403, and authorities cited. Nothing that is said in *Towson* v. *Towson,* 126 Va. 640, 102 S. E. 48, was intended to controvert this principle. The expression in the opinion in that case with respect to venue was not necessary to the decision, and was inadvertently used. In the instant case, however, all of the facts in question affirmatively appear from the record. They are affirmatively alleged in the bill, and such allegations are sustained by the proof, without any conflict whatever in the evidence.

[2] As shown by the uncontroverted evidence, the domicile of origin of the husband, the plaintiff, was in Virginia. That fact of itself, when shown, was *prima facie,* and, hence, sufficient evidence to establish the fact that the plaintiff's domicile continued unchanged from his birth to the time of suit, and so had been in Virginia, for more than one year prior to the commencement of the suit; unless the abandonment of that domicile by the acquisition of a new domicile of choice affirmatively appeared from the evidence. Minor's Conflict of Laws, sections 29, 31. Whether one has acquired a domicile of choice, and has thereby abandoned or lost his domicile of origin is, in some cases, an intricate and difficult question, but not so in the

instant case. The principles governing the subject of the acquisition of a domicile of choice are well settled. Minor's Conflict of Laws, secs. 56-64; *Cooper* v. *Com.,* 121 Va. 338, 93 S. E. 680; *Towson* v. *Towson,* 126 Va. 640, 102 S. E. 48; *Lindsay* v. *Murphy,* 76 Va. 428; *Yates* v. *Yates,* 115 Va. 678, 79 S. E. 1040. There is no evidence in the cause before us even tending to show that any of the essential requisites for the acquisition of a domicile of choice existed. All of the evidence is, indeed, to the contrary.

[3, 4] This being a case in which the plaintiff exercised the option given him by statute of bringing the suit "in the * * * corporation of the plaintiff's residence," the fact that the defendant was "not a resident" of the State of Virginia (being one of the conditions upon which such option is given by the statute), became jurisdictional. But what is held in *Towson* v. *Towson, supra* (126 Va. 640, 651-2, 102 S. E. 48), with respect to the meaning of the word "resident," as distinguished from the meaning of the word "domiciled," as both are used in the statute, is equally applicable to the meaning of the word "resident" as applied to the defendant wife in the cause before us. See, to the same effect, Minor's Conflict of Laws, section 20, and authorities cited. Even if the wife's domicile still remained the same as that of her husband at the time of the suit, and the domicile of the wife was then also in Virginia; still, at that time, according to her own testimony, she occupied a separate place of abode in the city of Washington, and, hence, was a resident of that city, and was then, within the meaning of the statute, "not a resident" of Virginia. Her then place of abode, or habitation, for the time being, was not in this State. Such a place of abode, or habitation, as contradistinguished from the place of mere transient, or, under some circumstances, even daily presence, for business or pleasure, is the place of one's resi-

dence within the meaning of the statute under considera-
tion, as it is of statutes of limitations, attachment statutes,
and the like.   One may be domiciled in one State and be a
resident of another within the meaning of such statutes.
*Griffin* v. *Woolford,* 100 Va. 473, 41 S. E. 949; *Long* v. *Ryan,*
30 Gratt. (71 Va.) 718; *Frost* v. *Brisbin* (N. Y.), 19 Wen-
dell 11, 32 Am. Dec. 423, and note pp. 427-8; *Atkinson* v.
*College,* 54 W. Va. 32, 46 S. E. 253.

[5] 2. (a) Was there sufficient evidence to sustain the
finding of the decree under review of the fact of the willful
withdrawal by the wife from the husband of the privilege
of sexual intercourse, without just cause or excuse, more
than three years before suit and the continuance of such
withdrawal for that period next preceding the suit; and.
if so (b), was such constructive desertion sufficient ground,
under the accompanying circumstances shown to exist in
this case, to sustain the decree of divorce, under the Vir-
ginia statute (contained in section 5103 of the Code) ?

Both branches of the question must be answered in the
affirmative.

[6] (a) While the evidence on the subject is conflicting,
there was sufficient testimony for the plaintiff husband,
if credible, to establish the fact of the constructive deser-
tion in question, and that it was accompanied by willful
conduct on the part of the wife, consisting of groundless
charges by the wife of infidelity on the part of the hus-
band, and of neglect on the part of the wife of her marital
duties with respect to attention to the keeping of the room
of the husband and his bed in a reasonable condition of
cleanliness and comfort and with respect to his meals,
which practically destroyed all home life in any true sense,
made it an unfit environment for the proper rearing of
the children, and rendered the marriage state almost in-
tolerable and impossible to be endured.   All of the testi-
mony on these subjects was heard *ore tenus* by the learned

judge of the court below.  He had the opportunity of observing the witnesses and their demeanor while testifying. In cases involving the mere weight of the testimony, his decision upon the facts is entitled to great weight.  (See the discussion of this subject in *Barnard* v. *Barnard, ante,* p. 155.)  We must, therefore, hold the facts to be concluded; and that the facts were those which the testimony for the plaintiff tended to establish, as we have stated above.

(b)  Upon the legal question involved, the following will be said:

The statute in Virginia (section 5103 of the Code) provides that: "Where either party willfully deserts or abandons the other for three years," the divorce may be decreed "to the party abandoned."

There is very high authority for the position that, in principle, and in accordance with "the adjudged law, speaking through its principles, rather than by a resolving of the exact question," the mere withdrawal of sexual intercourse, without just cause or excuse, constitutes willful desertion.  1 Bish. on Mar. & Div. (6th ed.), secs. 779, 782; *Whitfield* v. *Whitfield,* 89 Ga. 471, 15 S. E. 543; *Axton* v. *Axton,* 182 Ky. 286, 206 S. W. 480.  But see the comment or Mr. Bishop's position in *Fritz* v. *Fritz,* 138 Ill. 436, 28 N. E. 1058, 14 L. R. A. 685, and in note to that case, pp. 685-6.

In some jurisdictions the courts go to the opposite extreme of holding that so long as the husband and wife live under the same roof, there can be no desertion which will authorize a divorce; that there must be an abnegation of *all* of the duties of the marital relation to constitute desertion.  This holding, however, except in the State of Massachusetts (where, as pointed out by Mr. Bishop, the decisions have not been uniform on the subject), seems to be based on the language in the statutes involved in the

respective jurisdictions where such holding obtains, which is more restrictive than that found in the Virginia statute. For example, in Iowa it is so held, but there the statute· authorizes the wife to obtain a divorce from the husband "only when he willfully deserts the wife and *absents* himself without reasonable cause for the space of two years." *Pfannebecker* v. *Pfannebecker,* 133 Iowa 425, 110 N. W. 618; *Lambert* v. *Lambert,* 165 Iowa 367, 145 N. W. 920. Also, in Pennsylvania, where the statute requires the applicant for divorce on that ground to prove "willful and malicious desertion and *absence from the habitation* of the other, without reasonable cause, for and during the space of two years." *Wacker* v. *Wacker,* 55 Pa. Sup. Ct. 380; *Cunningham* v. *Cunningham,* 60 Pa. Sup. Ct. 622. Likewise in Missouri, where the statute provides that "if one of the parties *absent* himself or herself without reasonable cause for the space of one year," the other party is entitled to a divorce. *Williams* v. *Williams,* 121 Mo. App. 349, 99 S. W. 42; *Gruner* v. *Gruner,* 183 Mo. App. 157, 165 S. W. 865. So, too, in Maine, where the statutory requirement is *"utter* desertion." *Stuart* v. *Stuart,* 78 Me. 548, 7 Atl. 473. And in *Fritz* v. *Fritz,* 138 Ill. 436, 28 N. E. 1058, 14 L. R. A. 685, strongly relied on for the defendant wife in the instant case, the allegation of the bill was that the wife "has willfully *absented* herself," etc., and, without having the statute before us, we presume that such was the language of the statute involved. (The italics in the above quotation are supplied.)

There is, however, a middle ground, on which many courts meet in their view of the subject under consideration.

This is said in *Stewart* v. *Stewart,* 78 Me. 548, 551, 7 Atl. 473: "In England, formerly, divorces were not allowed for desertion. The only remedy for such a wrong was a suit in the ecclesiastical courts for restitution of conjugal rights.

But, those courts, while requiring the offending party to return and live with the libellant, never undertook to compel the granting of sexual intercourse. They made a clear distinction between 'marital intercourse' (sexual intercourse) and 'marital cohabitation' (living together). The latter was a right to be enforced by the courts; the former was a right to be enforced only *in foro conscientiae.* Lord Stowell, in *Foster* v. *Foster,* 1 Hag. Con. 154, said: 'The duty of matrimonial intercourse cannot be compelled in this court, though matrimonial cohabitation may.'" The same thing is said, in substance, in many of the authorities on the subject.

And, accordingly, many of the courts hold that mere withdrawal of sexual intercourse, although based on no just cause or excuse, where the marital duties are otherwise performed, does not constitute desertion. *Southwick* v. *Southwick,* 97 Mass. 327; *Segelbaum* v. *Segelbaum,* 39 Minn. 258, 39 N. W. 492; *Reid* v. *Reid,* 21 N. J. Eq. 331; *Anonymous,* 52 N. J. Eq. 349; 28 Atl. 467; *Steele* v. *Steele* (D. C.), 1 McArthur 505—but see the view of the chief justice expressed in his concurring opinion in this case; *Schoessow* v. *Schoessow,* 83 Wis. 553, 53 N. W. 856; *Prall* v. *Prall,* 58 Fla. 496, 50 So. 867; *Pratt* v. *Pratt,* 75 Vt. 432, 56 Atl. 86; and the other authorities to the same effect cited in *Ringgold* v. *Ringgold,* 128 Va., at p. 495, 104 S. E. 836.

[7] In entire accord with the principle on which the middle ground last referred to rests, the following authorities hold that the willful withdrawal of the privilege of sexual intercourse, without just cause or excuse, constitutes willful desertion, within the meaning of such statute on the subject as that in Virginia, when such withdrawal is accompanied, as in the cause before us, with such willful breach and neglect of other marital duties as to practically destroy home life in every true sense, and to render the marriage state well nigh intolerable and impossible to be en-

dured. Such conduct, on the part either of husband or wife, is considered to be a general withdrawal from the duties of the marital relationship; and, if willfully done, without just cause or excuse, this, by the great weight of authority, constitutes willful desertion. *Ringgold* v. *Ringgold,* 128 Va. 485, 104 S. E. 836; *Parmly* v. *Parmly,* 90 N. J. Eq. 490, 106 Atl. 456; *Evans* v. *Evans,* 93 Ky. 510, 20 S. W. 605; *Graves* v. *Graves,* 88 Miss. 677, 41 So. 384; *Magrath* v. *Magrath,* 103 Mass. 577, 4 Am. Rep. 579.

The conduct of the defendant which, together with the withdrawal of sexual intercourse, was held to have "amounted to a general withdrawal from matrimonial cohabitation" in *Ringgold* v. *Ringgold,* was not the same in its particulars as that of the defendant in the instant case; but the same principle was there applied which, we think, is applicable in the instant case.

In *Evans* v. *Evans, supra* (93 Ky. 510, 20 S. W. 605), the statute involved provided that an "abandonment" for one year, without fault upon the part of the complaining party, was ground for divorce. The Virginia statute is practically the same in its provisions. In the opinion of the court in that case, this is said: "The evidence, in our opinion, shows an abandonment by the husband for a year. It is true he continued to live at the same place where his wife resided, until about four months before the institution of her suit; but the testimony shows that, for a year or more, he had refused *to recognize her as his wife* or to live and cohabit with her. This amounted to an abandonment, although they slept beneath the same roof." (Italics supplied.)

The statute involved in *Graves* v. *Graves, supra* (88 Miss. 677, 41 So. 384), constituted "willful, continued and obstinate desertion for the space of two years," ground for divorce. The court below found the facts to be that the withdrawal of the privilege of sexual intercourse was accompanied by

the neglect of other marital duties to the extent that the parties occupied towards each other "the attitude of strangers," but they continued "to live in the same house," and the lower court held that, because of the last-named fact, there was no desertion. The appellate court, in reversing that case, said this: "The court below was correct in its finding of facts, but we cannot agree with the learned chancellor in the opinion that there can be no desertion where the parties live under the same roof * * *. Abandonment—desertion—may be as complete under the same shelter as if oceans rolled between."

The decree under review will be affirmed.

*Affirmed.*