**PLANT v. PLANT.**

No. 573.

Municipal Court of Appeals for the
District of Columbia.
Feb. 6, 1948.

Joseph M. Bonuso, of Washington, D. C., for appellant.

Frank Paley, of Washington, D. C. (Bertrand Bernath, of Washington, D. C., on the brief), for appellee.

Before CAYTON, Chief Judge, and HOOD and CLAGETT, Associate Judges.

CLAGETT, Associate Judge.

Plaintiff brought suit against her former husband to recover accumulated monthly sums for the support of a minor child provided for in a separation agreement, which had been incorporated into a divorce decree obtained by plaintiff in Virginia. The trial court found for plaintiff, and defendant appeals.

The couple were married in Connecticut in 1934, and one child was born of the union. Differences arose between them while they were living in Virginia. A separation agreement, signed on January 15, 1945, and acknowledged March 12, 1945, provided among other things for the disposition of property rights and interests; for custody of the child by the mother; a waiver by the plaintiff of all rights to alimony, attorney's fees and court costs in any divorce proceeding against the defendant; and for payment by the defendant, beginning on the 15th of January, 1945, of a monthly sum of $47.50 for two months, and thereafter $86.00 per month, "for the maintenance and support of the infant child of the said parties, which payment is to be in full and in lieu of all allowances for clothing, education and maintenance of the said son of the parties." Provision was made that the payments should continue as long as the child remained a student in a named or similar private school. The agreement specifically provided that its terms, both as to custody of the child and as to the payments for the child's support were subject to "such orders as a court of competent jurisdiction may make."

Suit for divorce was instituted by the plaintiff soon after she had acknowledged the separation agreement in March. On July 3, 1945, the Circuit Court for Arlington County, Virginia, granted the wife a divorce a mensa et thoro for willful desertion and abandonment by the defendant, with leave in the complainant to have it merged into a decree of divorce a vinculo matrimonii upon the termination of the statutory period. The decree recited it was made upon a report of a commissioner in chancery to whom the matter had been referred and upon argument of counsel. In the decree it was found that the husband had "willfully and voluntarily deserted and abandoned the complainant without just cause or excuse" on August 29, 1944. The necessary findings as to residence were contained in the decree which confirmed the separation agreement, awarded custody of the minor child to the mother, and, in a separate paragraph, "adjudged, ordered and decreed that the said defendant be and he is hereby, required to pay to the said complainant, as and for maintenance and support of the said infant child, the sum of $86.00 per month beginning on the 15th day of March, 1945, and monthly thereafter on the 15th day of each and every month, subject, however, to the limitations of the agreement heretofore mentioned and confirmed, and to the further order of this court." This decree was merged into a decree of divorce a vinculo on September 23, 1946, and the provisions of the former decree with regard to the maintenance and support and custody of the child were "confirmed in every particular." The final decree contained the notation "seen and agreed to", signed by the husband. Since the divorce, the husband has remarried.

This action was brought to recover four unpaid monthly installments, from November 15, 1946, to March 14, 1947, during which period the child was attending the named private school. The evidence showed that the defendant for each of the months had forwarded checks to plaintiff in the amount of only $30.00 each, marked

payment in full of the amount due, which were rejected by plaintiff.

At the trial the defendant urged that the separation agreement was invalid because it was entered into to facilitate and promote the divorce of the parties, and hence was against public policy.

The lower court, in a memorandum opinion, did not decide whether the separation agreement was entered into for the purpose of procuring a divorce, but allowed plaintiff a recovery for the full amount claimed, stating that if the claim had arisen out of an agreement for the sole benefit of the plaintiff, "it might well be" that the agreement would be invalid as contrary to public policy, but since "the rights and interests of a third person are involved (i. e. the minor son of the parties hereto)" and he had had no opportunity to be heard, the court would enter a finding for plaintiff, "without prejudice however, to any further proceedings in a competent court to resettle the rights and interests of the parties' minor son."

 We do not agree with the trial court that it was entitled to ignore all other factors in the case and base a decision for the wife solely upon the ground that the rights of the child were involved and that the child had not had an opportunity to be heard. We must, therefore, examine the facts and the law to determine whether the trial court's decision is supportable on any other ground since we are entitled to affirm a decision which we believe correct, even though the reasons given by the trial court are erroneous.[1]

The substance of the husband's testimony at the trial was that he was not attacking the divorce decree and was attacking only the money judgment of the Virginia court because he was earning only approximately $50.00 a week and could not afford to pay $86.00 a month; that he had not contested the divorce suit because "I wanted the divorce"; that he had originally agreed to pay his wife $100.00 a month but that before the separation agreement was signed he had worked out a set of figures and found that he could pay only $86.00 a

month; that he "finally" left his wife in January or February 1945 after the separation agreement had been signed; that his wife hadn't wanted the divorce because it would be "bad" for their son but that he wanted the divorce in order to have a harmonious existence "rather than live with both of us continually arguing and fighting"; that he and his wife agreed that she would divorce him; that he would give her so much money and that he would not contest the divorce.

 While it is well settled that a contract between husband and wife which facilitates or promotes their divorce may be invalid as contrary to public policy, such principle is not involved here because, while the amended bill of particulars upon which the suit was tried is somewhat ambiguous, it recites that the agreement was merged in the decree of divorce entered by the Circuit Court of Arlington County, Virginia, and that decree, as we have pointed out above, not only confirmed the separation agreement of the parties but ordered the husband to pay to the plaintiff, for the benefit of the child, the sums sued for by the wife in the present action. In the view that we take of the matter, therefore, this is a suit upon a final judgment of a court of another jurisdiction, and the issue must be tested by the rule of res adjudicata and the full faith and credit to which judgments of courts of other jurisdictions are entitled.

In urging the invalidity of the separation agreement the husband relies principally upon Cronan v. Cronan, 46 App. D. C. 343, which was a suit by a wife on a separation agreement in which cases were cited holding that any agreement between married people made with an intent to promote or facilitate the procurement of a divorce tends to close avenues of information and mislead the court. It was also pointed out, however, that where a separation actually has occurred, or is to occur immediately, a separation agreement between the parties would be upheld and that such a separation agreement is no bar to the bona fide application by either party for a divorce. In that case the court held

---

[1] Simpkins v. Brooks, D.C.Mun.App., 49 A.2d 549.

that the burden of proof was on the husband to show that the separation agreement was entered into fraudulently. On rehearing, Judge Robb, who wrote the original opinion of the court, declared, 46 App. D. C. 343, at page 354: "Mature reflection, in the light of the decision in the Dunbar case, [Dunbar v. Dunbar, 190 U.S. 340, 23 S.Ct. 757, 47 L.Ed. 1084], has convinced me that public policy does not demand that the court refuse to recognize the contract between these parties. (Citing cases.) They became husband and wife, and the conclusion is irresistible from the evidence that they would have remained so to this day but for the conduct of the appellee. He soon tired of appellant, became interested in another, and desired a divorce. The appellant remonstrated, and it is apparent, even from appellee's testimony, that she did not consent to obtain a divorce from him until all hope of reconciliation was gone. So far as the record discloses, there was ground for the divorce, *and had the agreement as to alimony been incorporated in the decree, the divorce could not have been impeached, except by a direct proceeding to reverse or annul it."* (Citing a case.) (Emphasis supplied.)

■ Here the husband emphasizes particularly the testimony of the wife that the husband did not leave home until after the separation agreement had been signed and that she signed the agreement "to facilitate the divorce." The words "to facilitate the divorce" were used in a question by the husband's attorney on cross-examination and while it is true she answered "That is right", it is not clear that she understood the full effect of the question. She also testified that her husband had deserted her in August of 1944. Her statements regarding the date of the desertion are not necessarily irreconcilable because under Virginia law departure of the deserting spouse from the couple's residence is not an essential element of desertion. In Chandler v. Chandler, 132 Va. 418, 112 S.E. 856, it was held that the willful cessation of sexual relations without just cause or excuse constitutes willful desertion, when accompanied by such willful breach and neglect of other marital duties as to practically destroy the home life in every true sense and to render the marriage state well-nigh intolerable and impossible to be endured.[2]

Counsel for the husband in the instant case relies strongly upon Hill v. Hill, Cal. App., 133 P.2d 445, wherein it was held that if the agreement between the parties was collusive, it was subject to attack even if "approved" in a divorce action and that the husband was not estopped to raise the question of fraud when sued on a balance due under the separation agreement. Counsel, however, apparently overlooked the fact that this decision was reversed by the California Supreme Court, 23 Cal.2d 82, 142 P.2d 417, and judgment ordered for the wife in spite of contrary findings of fact by the trial court.

Typical of cases upholding judgments such as the one in issue is Fales v. Fales, 160 Misc. 799, 290 N.Y.S. 655, wherein the facts were practically identical with those alleged here and where the court held that the separation agreement having become merged into a decree of divorce in another state having jurisdiction of the parties and the husband having remarried he could not raise the question of fraud when sued in another state for payments for the benefit of children provided for in the separation agreement and in the divorce decree. In language appropriate to the present case the New York court said, 160 Misc. 799, 290 N.Y.S. 659, at page 659: "The question arises whether this court in the instant case will go behind the Nevada decree to determine whether fraud was committed upon the public policy of this state and upon the courts of the state of Nevada by the parties to the separation agreement. I think not. This suit does not attack the validity of the Nevada divorce decree. The plaintiff's purpose here is to attack the agreement made prior to the Nevada divorce decree. The plaintiff is seeking to impugn an agreement which has been merged in the decree and judgment of a sister sovereign state without making a direct attack to impeach the judgment and decree itself. This cannot be done. * * * The plaintiff's hesitancy to make a direct attack

---

[2] Cf. Boyce v. Boyce, 80 U.S.App.D.C. 355, 153 F.2d 229.

on the decree itself is understandable, as it would endanger his present marital status, since, were that decree voided, he would still be married to defendant and his subsequent remarriage would have been void. The plaintiff seeks to relieve himself of his obligation under the agreement while he partakes of the benefits of the decree of divorce which followed the making of and merged the agreement. The plaintiff wishes to have his cake and eat it too. This court will not aid the plaintiff in his purpose." [3]

Under Virginia law a divorce a mensa et thoro for willful desertion and abandonment may be sought and granted immediately after the desertion occurs and, with respect to the divorce a vinculo, the only limitation as to time is that such decree must not be given within less than two years after the date of the desertion, provided the desertion has continued without interruption and without the resumption of cohabitation. This final decree was dated September 23, 1946. Nowhere in the record here is there any denial that there was a desertion by the husband, within the meaning of the Virginia law, on August 29, 1944. The fact of such desertion on that date was recited in the final decree of the Virginia court, which was approved by the husband. It is significant that the husband has confined his attack to the separation agreement and, if he is attacking the judgment, he does so only by inference.

Any attack upon the judgment on the ground that it was founded on perjured testimony would be based upon intrinsic fraud, and it is well established that a collateral attack upon a judgment is permitted only on the ground of extrinsic or collateral fraud.[4] Furthermore, the husband has recognized the validity of the divorce part of the judgment by his remarriage.[5] The judgment with respect to the payments to the wife is just as much a part of the Virginia judgment as is the provision for divorce. We believe that he is estopped to accept one part of the Virginia judgment and to deny the validity of the remainder. While public policy frowns upon agreements entered into to facilitate divorce, we believe public policy also frowns upon any course of action which would permit a divorce obtained by means of such agreements to stand while allowing the party who promoted the divorce to escape his obligations. This is especially true where the rights of a child are involved.

We note finally that the Virginia judgment specifically reserved to the Virginia court the right to revise future payments to be made by the husband to the wife for the benefit of the child. While the Virginia judgment is final so far as the past due payments now sued for are concerned,[6] the way remains open to the husband to apply to the Virginia court to reduce future payments.

Affirmed.

---

[3] Cf. Wolf v. Minton, Sup., 47 N.Y.S. 2d 531; France v. France, 79 App.Div. 291, 79 N.Y.S. 579; Bishop v. Bishop, Mo.App., 162 S.W.2d 332.

[4] United States v. Throckmorton, 98 U. S. 61, 25 L.Ed. 93; Fidelity Storage Co. v. Urice, 56 App.D.C. 202, 12 F.2d 143.

[5] Cf. Ruppert v. Ruppert, 77 U.S.App. D.C. 65, 134 F.2d 497; Saul v. Saul, 74 App.D.C. 287, 122 F.2d 64; Goodloe v. Hawk, 72 App.D.C. 287, 113 F.2d 753.

[6] Barber v. Barber, 323 U.S. 77, 65 S. Ct. 137, 89 L.Ed. 82, 157 A.L.R. 163; Phillips v. Kepler, 47 App.D.C. 384; Virginia Code (1942) § 5111, as amended.