## CIRCUIT COURT OF THE CITY OF RICHMOND

Marvin L. Carter, Sr.

v.

Lynette B. Carter

November 7, 1995

Case No. HG-285-4

BY JUDGE RANDALL G. JOHNSON

At issue in this divorce case is whether the parties, though living in the same house for a portion of what is claimed to be a one-year separation, were at that time living "separate and apart without any cohabitation and without interruption" within the meaning of Va. Code § 20-91(9)(a). After reviewing depositions taken on June 26, 1995, the court informed counsel by letter that the evidence was not sufficient to justify the entry of a final decree. Counsel, however, were invited to schedule an *ore tenus* hearing if they wanted to present further evidence, and an *ore tenus* hearing was held on October 26. After hearing evidence, the court suggested that by simply taking the case under advisement until December 1, 1995, which will be one year after the husband actually moved out of the marital abode, what the court and counsel agree is a rather unusual issue would be rendered moot, and a "routine" divorce could then be granted. The plaintiff-husband, however, made it clear through his counsel that he did not want to wait until December for an answer, and that he wanted the court to rule now. The court agrees that the parties are entitled to a ruling now.

The evidence presented at the hearing shows that the parties were married in August, 1982. They have two children, ages eight and three. According to the husband, serious marital difficulties began in February, 1994. At that time, the husband began sleeping in the children's bedroom, and all sexual relations with his wife ceased. For the next several months, the parties talked off and on about a divorce, and in July, 1994, the hus-

band went to see a lawyer about obtaining a divorce. The wife contacted her lawyer in August, 1994. It was also in August, 1994, that the husband claims he formed the intent to be permanently separate and apart from his wife, thereby commencing the one-year separation upon which he seeks a divorce. By that time, the husband says, he and his wife had almost completely stopped communicating, and he was spending almost every evening and weekend at his mother's house. He had moved most of his personal belongings from the marital bedroom into the children's room or to his mother's house, and the only reason he did not move out of the house completely, according to him, was for the sake of the children. The parties continued to make joint decisions concerning the children, shared household chores and, as far as the court can determine, were viewed by their neighbors and others as husband and wife. The husband's mother, who was the only other witness at the hearing, testified that by August, 1994, the husband and the children were spending "just about every" evening and weekend at her house. She did not corroborate what went on in the parties' house.

Based on the above evidence, the court is unwilling to grant a divorce based on a one-year separation beginning in August, 1994. In making this decision, the court does not hold that a husband and wife may *never* live separate and apart within the meaning of § 20-91(9)(a) while living in the same house. In fact, as far back as 1986, Judge Hughes of this court decided that such a situation *is* possible. *See Doggett v. Doggett*, 5 Va. Cir. 349 (1986). I do not disagree. I simply conclude that in the case now under consideration, the evidence is not sufficient to warrant a divorce.

*See also Chandler v. Chandler*, 132 Va. 418, 112 S.E. 856 (1922), in which our Supreme Court, in dealing with the issue of whether desertion can occur where the parties still live in the same house, quoted with apparent approval the following language from the Mississippi case of *Graves v. Graves*, 88 Miss. 677, 41 So. 384 (1906): "Abandonment — desertion — may be as complete under the same shelter as if oceans rolled between." 132 Va. at 432.

Over the years, it has become easier and easier for a husband or wife to obtain a divorce in Virginia. In fact, until 1960, mere separation was not even a ground for divorce. In that year, the statute was changed to allow a divorce where the parties had lived separate and apart, without any cohabitation and without interruption, for two years. In 1975, the period of separation was reduced to one year, and in 1982, a provision was added allowing parties who had entered into a separation agreement to be di-

vorced after a separation of only six months. Through each of these changes, however, the General Assembly has been careful to retain the mandate that no divorce be granted on the uncorroborated testimony of the parties. Va. Code § 20-99. This is obviously to insure, to the extent possible, that a husband and wife not conspire with each other to fabricate grounds for divorce where none otherwise exist. *See, e.g., Martin v. Martin*, 202 Va. 769, 774, 120 S.E.2d 471 (1961) ("The main object of the provision of the statute requiring corroboration is to prevent collusion. Where it is apparent that there is no collusion, the corroboration needs to be only slight."); *Venable v. Venable*, 2 Va. App. 178, 184, 342 S.E.2d 646 (1986) ("The purpose of requiring corroboration is to prevent collusion by the parties in obtaining a divorce. Where it is apparent that there is no collusion . . . the corroboration needs to be only slight."). For the same reason, the court believes that where parties continue to live in the same house, proof of the required separation must be clear. It is not clear in this case.

As already noted, it is the husband's contention that the parties' separation began in August, 1994, when he formed the intent to permanently live separate and apart from his wife. Such intent, of course, is necessary in any divorce. *Hooker v. Hooker*, 215 Va. 415, 417, 211 S.E.2d 34 (1975). That intent, however, must be corroborated. In most cases, such corroboration is shown by one of the parties leaving the marital home. Married couples normally live together, and if one spouse leaves the marital abode for a significant period of time, such leaving is usually evidence — and sufficient corroboration — of the parties' intent to permanently separate. Here, however, the parties continued to live under the same roof. While they no longer slept in the same bedroom, many couples do not sleep in the same bedroom. While the husband and the children visited the husband's mother daily, many children visit their mothers and grandmothers daily. With respect to the parties' lack of communication, in this age of television, computers, etc., that situation has unfortunately almost become the "norm;" it is not a ground for divorce.

On the other hand, the husband's testimony did make it clear that he and his wife, even after he says he formed the intent to permanently live separate and apart, continued to do things as a couple. They continued to raise their children together. They continued to share household chores. The wife continued to keep track of the household bills and expenses, and the husband continued to write checks for those bills and expenses when she requested. Perhaps most important, however, is that they did nothing

from which this court can discern any public manifestation of an intent to separate. Indeed, it was the husband's testimony that he stayed in the marital abode for the sake of the parties' children. This does not sound to the court like an intent to permanently end a marriage. Quite the contrary, it sounds like a reason many couples give — rightly or wrongly — for staying married. In any event, but for the husband's present statement that he formed an intent over a year ago to permanently separate from his wife, this couple continued to behave, at least until December, 1994, just like thousands of other married couples in Virginia. If the husband's professed intent can be corroborated simply by sleeping in a different bedroom in the marital home and visiting his mother for a year, I would rather have the General Assembly say so — not this court. The husband's request for a final decree based on an August, 1994 separation is denied.

I will leave it to counsel to decide what to do next. If counsel believe that a final order denying a divorce is appropriate, I will sign a sketch when submitted. The other option, of course, is to file a motion after December 1, 1995, asking leave to amend the date of separation contained in the bill of complaint to December 1, 1994. The court will then reconsider the husband's request for a final decree.