## Staunton

JAMES D. CARNEAL, III v. CAROLYN T. CARNEAL.

September 4, 1970.

Record No. 7131.

Present, I'Anson, Carrico, Gordon, Harrison, Cochran and Harman, JJ.

*Paul M. Shuford* (G. *Andrew Nea, Jr.; Wallerstein, Goode, Dobbins & Shuford*, on brief), for appellant.

*Charles A. Blanton, II (Linwood T. Wells, Jr.; Blanton, Lumpkin & Shaia, on brief), for appellee.*

GORDON, J., delivered the opinion of the court.

Carolyn T. Carneal brought this suit in November 1966 to divorce her husband, James D. Carneal, III, on the ground of constructive desertion or cruelty. By a final decree entered April 29, 1968, the trial court awarded her a divorce, custody of the two minor children, and alimony and support money. We awarded James an appeal.

Carolyn's counsel moves us to dismiss the appeal for non-compliance with our Rule 5:1, § 4, which requires that a notice of appeal and assignments of error be filed within sixty days after the date of the decree appealed from. The divorce decree was entered April 29, 1968, and James's notice of appeal and assignments of error were filed on July 29, 1968, more than sixty days later. James's counsel contends, however, that since the notice of appeal and assignments of error were filed within sixty days after June 7, 1968, they were filed in time. He relies on an order entered by the trial court on May 17, 1968 as suspending the effectiveness of the April 29 decree, insofar as it granted a divorce, for twenty-one days or until June 7.[1]

Carolyn's counsel contends that the May 17 order, n. 1 *supra*, suspended only the enforcement of the April 29 decree, not its effectiveness. She bases this contention on the use of the word "execution" in the order, a word that usually connotes enforcement.

The word "execution" has a different connotation, however, in the context of the May 17 order. That order did not suspend the provisions of the April 29 decree that could be enforced by the issuance of an execution—the provisions relating to alimony and support money. See the proviso contained in the order, n. 1 *supra*. Rather, the order suspended a self-executing provision, the decree of divorce.

---

[1] The May 17, 1968 order reads:

"It being represented to the Court by the attorney for the defendant, after verbal notice to the attorney for the plaintiff, that, due to circumstances beyond his control, he has been unable to give mature consideration to the terms and conditions of the final decree in this cause entered on April 29, 1968, and of record in Chancery Order Book 67, at page 372, and that he desires additional time to consider the said decree with respect to whether an appeal shall be taken therefrom, for good cause shown, it is ORDERED that execution of the decree entered in this cause on April 29, 1968, is suspended for a period of twenty-one (21) days from this date; provided, however, that the provisions of said decree with reference to alimony and support of the infant children of the parties shall remain in effect as of April 29, 1968. . . ."

So to give meaning to the May 17 order, we must conclude that it suspended the effectiveness of the decree of divorce until June 7.[2] The notice of appeal and assignments of error having been filed on July 29, within sixty days after June 7, we overrule the motion to dismiss.

James appeals only from the provisions of the April 29, 1968 decree that granted Carolyn a divorce and alimony. He contends that Carolyn deserted him and, therefore, he should have been granted a divorce on his cross-bill.

James and Carolyn, who are now between forty and forty-five, were married in 1949. In the fall of 1966, they were forced to sell their home, 8212 Berkshire Drive, in Henrico County near Richmond, to avoid foreclosure. James then rented an apartment on Three Chopt Road at $120 per month to house the family. But Carolyn rented a single family residence on Sleepy Hollow Road at $200 per month and moved into that residence on November 2, 1966 with the children. The question before us is whether James constructively deserted Carolyn because of his cruelty, as alleged in Carolyn's bill of complaint, or whether Carolyn deserted James, as alleged in James's cross-bill.

Carolyn first sued for divorce in 1963, but she and James were reconciled in that year and the first suit was dropped. In this second suit brought in November 1966, Carolyn relies in part on alleged acts of cruelty that took place before the reconciliation and were not repeated thereafter. We need not refer to those acts, whether or not they constituted cruelty, unless we find that other acts taking place after the reconciliation constituted cruelty and therefore revived the former acts. *See Sollie* v. *Sollie*, 202 Va. 855, 860-61, 120 S.E.2d 281, 285 (1961).

---

[2] This intention is confirmed by an order entered June 7, 1968, which reads:

"This day came the defendant, by counsel, and tendered a 'Motion for Court to Reconsider and Amend Decree,' which motion in writing is ORDERED filed, and it appearing to the Court from examination of the motion that no new evidence is offered, but rather the motion is in effect additional argument with respect to matters of fact and law previously argued, considered and determined by the Court, it is ADJUDGED, ORDERED and DECREED that the 'Motion for Court to Reconsider and Amend Decree' of the defendant is denied. To this action of the Court the objection and exception of the defendant, by counsel, is noted.

"It further appearing to the Court that the period of suspension of execution of certain of the provisions of the final decree entered in this cause expires at midnight on this day, June 7, 1968, it is ORDERED that *the final decree in this cause entered on April 29, 1968, shall be in full force and effect at the first minute of June 8, 1968.*" (Emphasis supplied.)

■ Aside from inconsequential charges,[3] Carolyn bases her charges of cruelty on two grounds: James failed to support his family adequately, and he refused sexual intercourse. The evidence relating to these charges was taken by depositions.[4]

Before their separation James and Carolyn lived in a $50,000 house. They employed a domestic servant, who worked two days a week; they had two automobiles; their children attended a private school. From July 1964 until February 1965, James gave Carolyn an allowance of $795 a month to take care of the household bills, which excluded the children's school expenses, taxes and upkeep on Carolyn's car. After February 1965 the allowance did not exceed $315 a month.

James is engaged in the real estate business as a sole proprietor specializing in commercial property. According to income tax returns,[5] his income for 1963, 1964 and 1965 was:

|  | 1963 | 1964 | 1965 |
|---|---|---|---|
| Gross income | $24,631.93 | $19,485.06 | $31,829.55 |
| Expenses | 7,609.43 | 10,184.75 | 11,905.94 |
| Net income | $17,022.50 | $ 9,300.31 | $19,923.61 |

James testified that for 1966 his gross income was $20,000 and his net income about $600-$700 per month. He testified that his debts totaled about $40,000.

Although the family spent more than James's income and his debts increased from year to year, neither James nor Carolyn took effective steps to improve their financial situation. Carolyn was employed in her husband's business for a while, but she ceased employment in September or October 1965 and has not worked since then. Their children remained in private school and their home was sold only under threat of foreclosure. Even after the home was sold, Carolyn

---

[3] Carolyn's bill of complaint charges that James is neurotic and has resorted to "the extreme practice of the Christian Science religion and communication with practitioners in all parts of the United States".

[4] All the evidence was taken by depositions, except for three *ore tenus* hearings relating to custody and visitation, temporary alimony and property rights. The court also interviewed the children in the absence of counsel.

[5] The tax returns, which were filed jointly by James D. III & Carolyn T. Carneal, reflect the income from and the expenses of the James D. Carneal, III Proprietorship. They reflect no income from any other source. James was not asked to explain and he volunteered no explanation why the ratio of business expenses to income varied so widely from year to year.

refused to move into an apartment and she independently rented and moved into a single family residence.

Carolyn says that James refused to work, he seldom left home before "10:00, 11:00 or 12:00 o'clock" and often came home for a nap in the afternoon. James explained that odd working hours were characteristic of his business. The evidence leaves doubt whether James did not earn more because he was lazy and did not attend to business, or because of business conditions or other reasons beyond his control.

Carolyn complains that James's extravagance led to his indebtedness. She refers to the radio-telephone in his automobile and his purchases of articles for his own pleasure. But James testified without contradiction that he needed a radio-telephone in his business. And the uncontradicted testimony about the cost of the articles bought by James shows that these purchases did not materially increase James's indebtedness.

The evidence prompts the conclusion that financial problems contributed primarily to the marital discord. But nothing in the evidence with respect to financial matters shows cruelty on James's part or legal justification for Carolyn's separating from him on November 2, 1966.

The evidence indicates that during a period of approximately four years before the separation, sexual intercourse was infrequent. Intercourse ceased after James and Carolyn moved into separate bedrooms, either in September 1965 (Carolyn's testimony) or January 1966 (James's testimony). Each party testified that the other was responsible for the infrequency of intercourse, the moving into separate rooms and the ceasing of intercourse.

Absent clear evidence of permanent and unexcused refusal of sexual relations, a showing of mere cessation of intercourse is not sufficient to prove cruelty or constructive desertion. *Hoback* v. *Hoback*, 208 Va. 432, 436-37, 158 S.E.2d 113, 117 (1967); *Davis* v. *Davis*, 187 Va. 63, 69, 45 S.E.2d 918, 921 (1948). Since the evidence does not show clearly that James permanently and inexcusably refused sexual intercourse, it does not support a finding of cruelty or constructive desertion.

Because the evidence does not support a finding that James's conduct amounted to cruelty or that he constructively deserted Carolyn, Carolyn left James without justification. "[O]ne spouse is not justified in leaving the other, unless the conduct of the other

is such to establish a foundation of judicial proceeding for a divorce". *Hoback* v. *Hoback, supra* at 435, 158 S.E.2d at 116, quoting from *Wimbrow* v. *Wimbrow*, 208 Va. 141, 143, 156 S.E.2d 598, 601 (1967). So we must conclude that Carolyn deserted James on November 2, 1966, entitling him to a divorce as prayed in his cross-bill. And James being entitled to a divorce because of Carolyn's misconduct, she is not entitled to alimony. *McClung* v. *McClung*, 206 Va. 782, 146 S.E.2d 195 (1966); *see Mason* v. *Mason*, 209 Va. 528, 165 S.E.2d 392 (1969).

We reverse the decree of April 29, 1967, insofar as it awarded Carolyn T. Carneal a divorce and alimony and denied James D. Carneal, III a divorce, and remand the case for entry of a decree consistent with the views expressed in this opinion.

*Reversed and remanded.*