**Alexandria**

ROBERT E. JAMISON

v.

MARY L. JAMISON

No. 1375-85

Decided February 3, 1987

COUNSEL

Jerome P. Friedlander, II (Friedlander, Friedlander & Brooks, P.C., on brief), for appellant.

Thomas J. Freaney, Jr., for appellee.

OPINION

**MOON, J.** —Robert E. Jamison seeks reversal of a judgment denying him a divorce upon the ground of desertion. We are asked to decide if, under the circumstances of this case, a divorce may be granted on the ground of desertion where the parties continue to reside under the same roof. The commissioner in chancery recommended that Mr. Jamison be granted a divorce, finding that the wife had deserted her husband. The trial judge denied the divorce because the parties continued living together and had other minimal family contacts. We agree with the commissioner in chancery and reverse the trial court's judgment.

While the report of a commissioner in chancery does not carry the weight of a jury's verdict, Code § 8.01-610, it should be sustained unless the trial court concludes that the commissioner's findings are not supported by the evidence. *Strauss v. Princess*

*Anne Marine & Bulkheading Co.*, 209 Va. 217, 226, 163 S.E.2d 198, 205 (1968) (citing *Thrasher v. Thrasher*, 202 Va. 594, 604, 118 S.E.2d 820, 826 (1961)); *Hodges v. Hodges*, 2 Va. App. 508, 514, 347 S.E.2d 134, 138 (1986). This rule applies with particular force to a commissioner's findings of fact based upon evidence taken in his presence, *Hudson v. Clark*, 200 Va. 325, 329, 106 S.E.2d 133, 136 (1958), but is not applicable to pure conclusions of law contained in the report. *Sterling v. Trust Co. of Norfolk*, 149 Va. 867, 876, 141 S.E.2d 856, 858 (1928).

■ As we view the ruling of the trial judge, he disagreed with the commissioner not upon the facts but upon the conclusions of law. We must, therefore, "review the evidence and ascertain whether, under the correct application of the law, the evidence supports the findings of the commissioner or the conclusions of the trial court." *First National Bank of Martinsville & Henry County v. Cobler*, 215 Va. 852, 854, 213 S.E.2d 800, 802 (1975).

The parties were married in 1959 and had three children, all over the age of eighteen at the time the divorce proceedings were instituted in 1985. The commissioner found that in late 1979, Mrs. Jamison moved out of the master bedroom suite. For the next two years she slept on a mattress on the floor in the bedroom occupied by two of her sons until another bedroom was vacated when their eldest son left the home. She stayed alone in that room until April, 1984. Then, while Mr. Jamison was away from the house, she removed all of his belongings from the master bedroom and took that room for herself. Beginning in 1979, she denied her husband all sexual privileges, keeping her bedroom door locked at night. She stopped doing her husband's laundry, cleaning his room, and preparing his meals. In fact, when she did prepare a meal for the adult children still living in the house, she announced that he was not to eat any of it. On occasions when he fixed meals for their sons, she did not eat and if he failed to promptly clean the pots and pans, she would place them in his bed. She also unplugged the television when he tried to watch it.

Mrs. Jamison stated that her husband did all of his own laundry and about ninety percent of their adult children's laundry. He cleaned his own room and performed some of the heavy cleaning in the house.

Mrs. Jamison admitted that she failed to attempt to help alleviate Mr. Jamison's financial problems. She had a permanent civil service rating and was capable of working but refused to do so because she maintained that a mother's place was in the home, even though all of her children were adults by that time. She also refused to co-sign a loan when financial problems became critical and once took their house off of the market when he tried to sell it to get money, even though she testified that she wanted her husband to sell a farm they owned.

There were very few activities in which the parties cooperated. They shared certain common areas of the house, such as the kitchen, although they used them at separate times. Mr. Jamison wrote a check to the supermarket which Mrs. Jamison took to buy groceries each week. Mr. Jamison used some of the food that was purchased when he prepared his own meals. On occasion, they could, with some civility, sit in the same room and watch a television special with their adult children. They also ate together at family gatherings, such as at Easter, Christmas, Thanksgiving, an annual family picnic, and their children's birthdays. These family meals occurred no more than six times a year.

The commissioner found that Mrs. Jamison withdrew from all of the marital duties because of anger over her husband's financial affairs, but that she did nothing to help resolve them. The commissioner found that the parties literally could not tolerate each other. The children testified and fully corroborated the relationship between the parents. In essence, they stated that their parents hated one another.

In *Chandler v. Chandler*, 132 Va. 418, 112 S.E. 856 (1922), the Supreme Court first stated under what circumstances a divorce could be granted on the grounds of desertion where the parties remained under the same roof:

> [T]he willful withdrawal of the privilege of sexual intercourse, without just cause or excuse, constitutes willful desertion, within the meaning of such statute on the subject as that in Virginia, when such withdrawal is accompanied, as in the cause before us, with such willful *breach and neglect of other marital duties* as to *practically* destroy home life in every true sense, and to render the marriage state well nigh intolerable and impossible to be endured. Such conduct, on

the part either of husband or wife, is considered to be a general withdrawal from the duties of the marital relationship; and, if willfully done, without just cause or excuse, this, by the great weight of authority, constitutes willful desertion.

*Id.* at 430-31, 112 S.E. at 860-61 (emphasis added).

Evidence in this case supports the finding of the willful withdrawal of sexual privileges without just cause or excuse and the willful breach and neglect of other marital duties. The trial judge construed the holding in *Chandler* to require a cessation of all marital duties. However, we construe *Chandler* to hold that where sexual privileges are willfully withdrawn without just cause or excuse, a finding of desertion does not require the breach and neglect of *all* marital duties but only the breach of other *significant* marital duties, which results in the practical destruction of home life in every true sense. It is hard to imagine a more deplorable home situation, absent physical abuse, than that in the Jamison household.

The activities that the couple did together (or, more accurately, at the same time) were no more than that which was required by persons living under the same roof. There was no evidence that the joint activities were undertaken in a spirit of marital harmony. To the contrary, almost every encounter was undertaken with hostility and disdain for the other party. We find that the commissioner in chancery's findings and recommendations support a conclusion that the wife's actions were "with such willful breach and neglect of other marital duties as to practically destroy home life in every true sense, and to render the marriage state well nigh intolerable and impossible to be endured." *Id.*

Mr. Jamison was not required to remove himself from the house, as Mrs. Jamison contends *Chandler* requires, before filing a suit for divorce. His wife deserted him by her conduct. In *Chandler*, although the husband removed himself from the home when the divorce was filed, the court recognized that the actual desertion took place several months earlier at a time when the parties still lived together.

The cases of *Aichner v. Aichner*, 215 Va. 624, 212 S.E.2d 278 (1975) and *Goodwyn v. Goodwyn*, 222 Va. 53, 278 S.E.2d 813 (1981), cited by Mrs. Jamison, are not applicable to the facts of

this case. In *Aichner*, the Supreme Court found that the evidence failed to show clearly that the wife permanently and inexcusably refused sexual intercourse, which was the only act of cruelty the husband alleged. 215 Va. at 626, 212 S.E.2d at 279. In *Goodwyn*, the wife's refusal of sexual relations lasted for two months and there was no evidence that the wife neglected her other familial responsibilities. She continued to work, clean the house, and cook meals. 222 Va. at 55, 278 S.E.2d at 814. The court reiterated what it held in *Aichner* and *Carneal v. Carneal*, 211 Va. 162, 176 S.E.2d 305 (1975), "that a showing of mere cessation of intercourse, absent evidence of permanent and unexcused refusal, was insufficient to establish cruelty or desertion as a grounds of divorce." 222 Va. at 52, 278 S.E.2d at 814. The cessation of intercourse in this case continued for five years, sufficient time to support a finding that it was permanent.

Accordingly, the decree is reversed and the cause remanded to the trial court with directions that Mr. Jamison be awarded a divorce upon the ground of desertion and for further proceedings consistent with this opinion.

*Reversed and remanded.*

Duff, J., and Keenan, J., concurred.