## CIRCUIT COURT OF FREDERICK COUNTY

Linda A. Kerns

v.

Eugene L. Kerns

May 30, 1988

Case No. (Chancery) 87-266

By JUDGE ROBERT K. WOLTZ

For decision is the question of temporary spousal support for complainant wife who has sued the defendant for divorce *a mensa* on the ground of constructive desertion. Issue is raised by motion of defendant to strike the complainant's evidence on ore tenus hearing in support of her application for support. The basis for the motion is that both parties still live "under the same roof" at the marital abode. At the hearing the complainant presented only her own testimony together with an affidavit of income and expenses. Both parties are employed. Their 19-year-old employed daughter resides with them. Salient points of the complainant's testimony are as follows.

1. The parties ceased occupying the same bedroom between four and five months prior to the hearing. The defendant left the bedroom and moved to a smaller one next to the basement recreation room. She did not testify why he left nor whether it was at his or her desire nor whether there had been any requests by either that joint occupancy of the bedroom be resumed.

2. She previously purchased the groceries and did the cooking but quit doing so when he complained about

the amount spent on groceries and because he began buying the groceries which she felt were inadequate and were not satisfactory to her. Cooking is in the one kitchen and is pretty much a matter of everyone for himself. She has a very light breakfast, lunches out and either does not eat dinner or if so eats out.

3. The laundry and dryer are used "mostly" on an everyone for himself basis.

4. He both goes to and returns from work two hours earlier than she and he is usually home and gone before she arrives after work. They are not much at home at the same time and have little association during the work week due in part to their work schedules. If they are home at the same time one is likely in the basement recreation room and one in the first floor den or T.V. room. In any event "ordinarily" they are in different parts of the house, she up and he down or vice versa. They have gone for as much as a week without seeing each other.

5. He has given her no money for clothes, but apparently he never has. She "feels" that no expenses are shared by her and him. She withdrew $3,000 from a joint savings account ten months before the hearing to pay for clothing bills for herself and their daughter. She did not testify whether that account had been exhausted or for other reasons was no longer in existence. She withdrew $500 from a joint checking account to pay her lawyer in this suit. She gave no further evidence concerning this account. He dropped her and the daughter's motor vehicles from his insurance policy. Formerly he paid for the basic telephone service and she for long distance service but for the previous two months he has paid nothing for telephone but does pay for other utilities.

For decision at this point is not the divorce itself, but only spousal support *pendente lite.* Ordinarily that issue is resolved without reference to elements of the substantive ground for divorce. Even temporary spousal support, however, presupposes a separation of the parties sufficient to justify an award. Legally, separation may occur between parties who continue to live in the same house, but in any event the separation must be without the consent of the spouse seeking to establish a desertion. *See generally* 6A Michie Jur., *Divorce and Alimony* sect. 18, pages 240 and 241. In my opinion the same rule

applies to grant of temporary spousal support where the couple continue joint occupancy of the marital abode.

As used in our divorce statutes, a prime element of desertion is the actual breaking off of marital cohabitation. This has been settled for well over a hundred years beginning with *Bailey v. Bailey*, 62 Va. (21 Gratt.) 43 (1871), and affirmed as recently as *Petachenko v. Petachenko*, 232 Va. 296 (1986).

As pointed out by this court in *Reel v. Reel*, ▌ Circuit Court of Frederick County, Chancery No. 6377 (July 2, 1981):

> The word "cohabitation" has different meanings. It can mean living together, living together as man and wife, or sexual intercourse. Black's Law Dictionary, 3d ed. Its literal meaning and by derivation is simply living together. *Tarr v. Tarr*, 184 Va. 443 (1945).

*Tarr* in construing § 20-94, which in part deals with condonation of adultery as a bar to divorce on that ground, found "cohabited" to mean sexual intercourse. But "matrimonial cohabitation" is more than sexual relations, for,

> It also imports the continuing condition of living together and carrying out the mutual responsibilities of the marital relationship. (Citations omitted). A mere denial of sexual intercourse where other marital duties are performed, does not constitute desertion.

(Citations omitted). *Petachenko* at page 299.

The basic and broad meaning of the word cohabitation as merely living together is not pertinent to the present inquiry. Its narrow meaning as sexual intercourse while involved here is not alone decisive as "a showing of mere cessation of intercourse is not sufficient to prove cruelty or constructive desertion." *Carneal v. Carneal*, 211 Va. 162, 166 (1970). Again as to the third meaning *Reel, supra*, says:

The remaining meaning of cohabitation, namely, living together as man and wife, involves many and varying sets of facts and circumstances. As distinguished from sexual intercourse merely it is that type of association which even unmarried couples may have though that association may be criminal. . . .

While no precise delineation can be given to the concept of living together as husband and wife, it includes the idea of services rendered one to the other, mutual society and companionship, aid and comfort, protection and conjugal affection, many of which things are included within the term "consortium." Sexual intercourse is a usual, important, but not necessarily required, element of the concept.

The issue then is, does the evidence of the complainant wife prove that the defendant husband has broken off "matrimonial cohabitation" without her consent? I find that it does not. Under the evidence of this case my conclusions and supporting decision on the ultimate issue are:

When married couples live together under the same roof at the marital abode, a strong presumption arises that they are living in state of matrimonial cohabitation. This does not mean necessarily that all of the many facets and incidents of such cohabitation are present. This presumption is based upon our common social experience. When the marriage bond is forged and the parties so bound commence and continue to reside and have their domestic life under a common roof tree, we view them as being in a state of matrimonial cohabitation. That is the normal and accepted state under those circumstances and one who wishes to establish in a particular instance an exception to this deeply rooted norm bears a considerable burden to prove that the parties are living under the same roof but in a state of separation.

To hold otherwise would in many instances endanger the underpinnings of marriage contrary to the policy of this Commonwealth favoring that institution. A contrary ruling also would be an invitation to litigation not only ill-founded but disruptive of the matrimonial state.

Faced with a strong presumption, strong evidence is required to rebut it. This the complainant's evidence simply does not do. For example, that the husband left the marital bed while it may lead to an inference that this was voluntary on his part, nowhere in the wife's testimony does it appear why he left or at whose instigation; he could well have at her specific request or insistence, or by mutual consent. The evidence is unconvincing of his dereliction in this particular.

The same also applies to her testimony that the parties rather kept to themselves in separate portions of the marital home. Was this by mutual agreement or at her wish or by his unjustified action? Of importance, too, is that on these and other matters the complainant's testimony is completely uncorroborated. In domestic relations matters understandably corroboration is not always easy to come by. Here, however, a grown child living in the same household and one whom the evidence discloses may have been more favorably disposed to the complainant than to the defendant and who possibly could have corroborated at least in part was never summoned nor called as a witness.

While the complainant's testimony does show a considerable breakdown in this marriage, more than that is required of her. Without deciding to what degree or numerical extent the incidents of matrimonial cohabitation must wither away before that cohabitation has reached a state of legal demise, and while acknowledging that there appear to be derelictions on the part of the husband, the complainant must sufficiently show that matrimonial cohabitation has ceased and primarily because of the fault of the defendant. This she has not done.

Generally speaking the element of fault is not of great significance on hearing *pendente lite* for spousal support. But where the presumption is that married couples living under the same roof are in a state of matrimonial cohabitation, my view is that grant even of that such spousal support is dependent on establishing at least a prima facie case that the adverse party primarily caused the destruction of that cohabitation.

For the foregoing reasons the complainant's motion for support *pendente lite* is denied.