256

## CIRCUIT COURT OF CHESTERFIELD COUNTY

T. Hairfield

v.

Hairfield

November 13, 1989

Case No. CH-88-1486

By JUDGE HERBERT C. GILL, JR.

On August 16, 1989, this Court heard argument in regard to the following:

1. Defendant's counsel cites § 8.01-399 of the Virginia Code and moves for the exclusion of testimony by Dr. J. David Markham and Dr. Michael D. Mandel. Aforesaid physicians had treated both parties.

2. Defendant's counsel cites §§ 8.01-399 and 8.01-400.2 and moves for the exclusion of testimony by counselor Mary Hulbert, who had advised both parties.

3. Plaintiff requests entry of divorce on the grounds of cruelty or constructive desertion. Defendant's counsel moves to strike the Bill of Complaint.

4. Defendant requests entry of divorce on the grounds of cruelty or constructive desertion. Although the cross-bill asserts that plaintiff's conduct constitutes constructive desertion, a prayer for a divorce on said grounds is not set forth. Indeed, defendant, by his cross-bill, states that grounds for divorce do not exist. Plaintiff's counsel moves to strike the cross-bill.

The Court will also consider whether the evidence warrants entry of a decree pursuant to § 20-91(9)(a). The Court's analysis follows a review of the evidence.

In brief, plaintiff asserts that abusive conduct corroborated by physical ailments sufficiently establishes constructive desertion or cruelty. It would appear that much of the alleged abuse occurred prior to 1986. Plaintiff stresses an incident in 1985 while the parties were in Deltaville, Mississippi. Plaintiff had been struck. Defendant claims provocation.

General references to abuse were alleged after 1985 as follows:

> Since 1985 he has threatened, primarily. He has gotten me in the corner in the kitchen and physically restrained me and put bruises on my upper arms. This has occurred a number of times, it occurred prior to this, too.
>
> Q. But it has occurred several times in the last few years?
>
> A. It's [sic] has occurred several times in the last few years, yes.
>
> Q. Now, what about verbal abuse, what has been the communication between you and your husband during the last couple of years?
>
> A. As it pertains to verbal abuse.
>
> Q. Yes.
>
> A. It's his outlet. He has -- he's constantly told me that I was no good, I couldn't do anything right, and the obscenities were always interspersed with the degrading and demeaning words.

Deposition of T. Hairfield taken May 9, 1989, pages 51-52.

The following is a summary of the evidence offered by depositions:

258

1. Mary Hulbert, counselor, had conducted sessions with plaintiff, most recently from 1987 to date. She stated that plaintiff had suffered from stress related to a number of potential causes as low self-esteem, unhappy marriage, etc. . . . *See* page 24.

2. Dr. Michael Mandel, internist, treated plaintiff for headaches and visual impairment from approximately 1985 to date. Although Dr. Mandel attributes stress as a "significant part" of her anxiety symptoms, he was unable to state within a probable degree of medical certainty that all of the stress which he observed or concluded from his observation was related entirely to her marital situation. *See* page 10.

3. Dr. J. David Markham, internist, treated Plaintiff for anxiety symptoms and depression from approximately 1976 through 1984. Although Dr. Markham opined that marital problems were the primary cause of plaintiff's symptoms, he was unable to state within a probable degree of medical certainty that all of the stress which he observed or concluded from his observation was related entirely to her marital situation. *See* page 23.

4. Dr. Thomas Smith, neurologist, treated plaintiff for headaches and visual impairment from 1987 to date. Dr. Smith opined that the probable cause of plaintiff's headaches was injuries sustained from an accident occurring in 1972.

5. Sharon Stevens, registered dietician, advised defendant for obesity, hypertension, and diabetic condition from approximately April, 1987, through April, 1988. Ms. Stevens noted that plaintiff accompanied defendant for the office visits and understood that plaintiff purchased and prepared defendant's meals as prescribed.

6. Bernice Wilson, plaintiff's sister, corroborates the jurisdictional requirements and reports what plaintiff told her as to defendant's conduct. Ms. Wilson's independent knowledge of fault conduct refers to adulterous acts alleged to have occurred in 1977. She notes that the parties are living together but not as "husband and wife." Few details are offered in regard to the parties' daily routines and interaction.

7. In addition to the previously highlighted portion of plaintiff's deposition, she alludes to acts of voyeurism committed from approximately 1952 to 1976.

8. The defendant admits voyeurism and that he struck plaintiff in 1985, yet characterizes such as a slap and considers his conduct as a justifiable response to plaintiff striking at him. Defendant further cites plaintiff's abusive language, unwarranted allegations of adultery, and cessation of marital relations by her as causes contributing to the demise of the relationship.

Neither party has presented evidence sufficient to establish their respective claims of constructive desertion or cruelty. Further, the evidence does not warrant entry pursuant to § 20-91(9)(a) of the Virginia Code. The Court's evidentiary rulings precede discussion of the grounds of divorce. Counsel for defendant is directed to draft an order in accordance with this opinion. Should counsel desire to retain the matter on the Court's docket, they may do so.

I. *Defendant's Motion to Exclude Testimony by Dr. J. David Markham and Dr. Michael D. Mandel*

Section 8.01-399 does not preclude the Court's consideration of testimony by the named physicians. Unless the patient consents, said provision bars testimony regarding information obtained while "attending, examining, or treating the patient in a professional capacity if such information was necessary to enable him to furnish professional care to the patient" (emphasis added). The testimony given addresses information obtained from plaintiff, not defendant. The information was acquired during the care of and in regard to treatment of plaintiff, not defendant. The evidence does not even remotely suggest that information obtained from plaintiff was either for the purpose of or necessary for any care undertaken on defendant's behalf.

II. *Defendant's Motion to Exclude Testimony by Mary Hulbert*

Section 8.01-400.2 precludes the Court's consideration of the following testimony by the named psychologist as relating to or potentially relating to information communicated to defendant for which consent was not obtained: Deposition taken July 13, 1989, page 17, lines 18-19; page 18, lines 5-14, 18-22; page 27, lines 9-10, 15.

Ms. Hulbert apparently is a licensed psychologist as defined by § 54.1-3600 (*see* her Deposition, pages 4-5), and therefore, § 8.01-400.2 bars her testimony regarding information obtained while counseling defendant without his consent. Reasonably construed, the client holds the privilege as to information disclosed by him and that information obtained for his behalf. Other than the testimony previously outlined, Ms. Hulbert's testimony refers to information obtained from plaintiff in regard to her counseling needs.

## III. *Plaintiff's Request for Entry on Grounds of Defendant's Construction Desertion Denied; Defendant's Motion to Strike the Bill of Complaint Moot*

Plaintiff's request for entry of a decree for divorce on the grounds of defendant's constructive desertion or cruelty is denied. Defendant's motion is moot. The evidence fails to establish said grounds.

In general, "misconduct which will form a good grounds for legal separation must be very serious and such as amounts to extreme cruelty, entirely subversive of the family relations, rendering the association intolerable." *Hoffecker v. Hoffecker*, 200 Va. 119 (1958), citing *Butler v. Butler*, 145 Va. 85 (1926). *See also Zinkhan v. Zinkhan*, 2 Va. App. 200 (1986). Abandonment and desertion pursuant to either § 20-91(6) or § 20-95 of the Virginia Code require the establishment by a preponderance of the evidence "a breach of matrimonial duty" coupled with an intent to desert the relationship. *Petachenko v. Petachenko*, 232 Va. 296 (1986); *Bacon v. Bacon*, 3 Va. App. 484 (1986). "Constructive" desertion additionally requires cruelty such as to constitute desertion of the marital relationship although the party committing "cruel" acts did not leave the marital home. *Zinkhan v. Zinkhan*, 2 Va. App. 200 (1986).

Violence and apprehension of bodily harm are not indispensable ingredients of cruelty as "mental anguish, repeated and unrelenting neglect and humiliation, may be as bad as physical wounds and bruises, and may be visted [sic] upon an unoffending spouse in such degree as to amount to cruelty even in the very strict sense in which that term ought always to be used in the law of divorce." *Hoffecker v. Hoffecker*, 200 Va. 119 (1958). Acts of cruelty

are cumulative "augmenting by each additional act, although at first they are condoned to a certain point." M. Brinig and D. White, Virginia Domestic Relations, 181 (1985) citing *Miller v. Miller*, 140 Va. 424 (1924), and *Wimbrow v. Wimbrow*, 208 Va. 141 (1967). However, continued cohabitation usually affirms the marriage. *Vardell v. Vardell*, 225 Va. 351 (1983). Corroborated acts of cruelty subsequent to reconciliation revive prior acts of cruelty. *McIlwain v. McIlwain*, 215 Va. 633 (1975).

Direct or circumstantial evidence must corroborate testimony by the parties which is crucial to establishing the grounds for divorce. Section 20-99 of the Virginia Code; *Venable v. Venable*, 2 Va. App. 178 (1986). However, only slight corroboration is necessary where collusion is not apparent. *Collier v. Collier*, 2 Va. App. 125 (1986).

Plaintiff's counsel erroneously relies on the holding in *Jamison v. Jamison*, 3 Va. App. 644 (1987). In *Jamison*, the trial court denied petitioner's request for entry of divorce on the grounds of willful desertion. On appeal, the Court considered the following and reversed:

1. Wife left marital bedroom and denied marital relations (apparently in part due to husband's inept financial dealings).

2. After which, wife failed to contribute to "marital" duties (chores, financial assistance, etc. . . .).

3. Any encounter between the parties was "undertaken with hostility and disdain for the other party."

4. The aforementioned "relationship" was fully corroborated.

The holding in *Jamison* addressed willful, not, constructive desertion. Plaintiff seeks divorce on the grounds of constructive desertion. As previously stated, constructive desertion requires the corroboration of "cruel" acts. Willful desertion requires a showing of breach of the matrimonial duty and the intent to desert the relationship.

Assuming arguendo that the standard in *Jamison* is applicable, unlike *Jamison*, the lack of a marital relationship was not fully corroborated. The evidence does not establish an absence of contribution to marital duties or mutual hostility and disdain. Indeed, the testimony of S. Stevens, defendant's dietician, provides evidence of cooperation between the parties.

The evidence submitted fails to establish either a breach, requisite intent, or cruel acts. The evidence presented addresses "cruelty." The testimony by the witnesses does not establish defendant's withdrawal from the relationship. Defendant attended joint counseling sessions at the request of plaintiff and her counselor. *See* Deposition of M. Hulbert taken July 13, 1989, pages 17-18.

Cohabitation continued after prior acts of voyeurism. Plaintiff's allegations of adulterous conduct, physical and verbal abuse, and humiliation are not sufficiently corroborated. The sole independent observation tending to corroborate plaintiff's allegations is that her sister recalled defendant leaving a woman's apartment on October 26, 1977. *See* Deposition of B. Wilson taken May 9, 1989, pages 12-15. Plaintiff's sister was unaware of physical or verbal abuse, except, "she's told me about being frightened and she would put her car keys in her jacket and be ready to leave the house." *See* Deposition of B. Wilson taken May 9, 1989, page 15.

Vague references of marital discord offered by plaintiff's witnesses were premised on conversations with plaintiff. Even slight corroboration requires independent knowledge or observation.

Plaintiff's testimony of abuse after 1985 is as vague as the statements offered by her witnesses. *See* Deposition taken May 9, 1989, pages 51-52. No specific incidence of verbal or physical abuse after 1985 has been presented to the court.

Although plaintiff submitted extensive testimony from physicians and a counselor, the evidence does not, even remotely, establish that her ailments were the result of defendant's conduct and thereby fails to corroborate plaintiff's allegations. Neither physician was able to state within a probable degree of medical certainty that the stress observed was the result of the marital relationship. *See* Deposition of Dr. Markham taken July 12, 1989, page 23, and Deposition of Dr. Mandel taken July 13, 1989, page 10. Dr. Thomas Smith, a neurologist who evaluated plaintiff's condition, concluded that injuries sustained in an automobile accident were the probable cause of her headaches and visual impairment. *See* Deposition taken July 12, 1989, pages 10-11.

IV. *Defendant's Request for Entry on Grounds of Constructive Desertion Denied; Plaintiff's Motion to Strike the Cross-bill Moot*

Defendant failed to sufficiently corroborate allegations of cruelty, and therefore the request for entry on the grounds of constructive desertion or cruelty is denied. No evidence even tending to corroborate such was presented.

V. *Evidence Does Not Warrant Entry of Decree Pursuant to Section 20-91(9)(a)*

The evidence also fails to establish that the parties are "living separate and apart without any cohabitation" pursuant to § 20-91(9)(a). Counsel have not presented evidence sufficient to establish either the requisite intent or absence of marital cohabitation.

Reasonably construed, § 20-91(9)(a) requires "proof of an intention on the part of at least one of the parties to discontinue permanently the marital cohabitation, followed by physical separation for the statutory period." *Hooker v. Hooker*, 215 Va. 415 (1975). Otherwise, "many extended separations required by other circumstances could ripen into instant divorce without the salutary period of contemplation required by the statute which the parties have an opportunity for reconciliation." *Id.*, 215 Va. 415 (1975).

Although divorces have been granted pursuant to Section 20-91(9)(a) while the parties were dwelling under the same roof, *see Brightly v. Brightly*, C-68816 (Fairfax County 1981), and *Doggett v. Doggett*, 5 Va. Cir. 349 (Richmond 1986), such would appear to undermine the rationale presented in *Hooker*. In addition to the difficulty of determining whether collusion permeates the "separation," there is also, "absent a sign of when the parties in fact entertained the intent to live separate and apart." M. Brinig and D. White, Virginia Domestic Relations, 181 (1985). Several Courts have denied requests for divorces pursuant to § 20-91(9)(a) where the parties were living under the same roof. *Yane v. Yane*, 8 Va. Cir. 336 (Henrico Co. 1986); *Brown v. Brown*, 12 Va. Cir. 525 (Warren Co. 1983); *Higgs*

*v. Higgs*, 12 Va. Cir. 509 (Warren Co. 1983); *Reynolds v. Reynolds*, 9 Va. Cir. 423 (Henrico Co. 1977).

Cohabitation refers to dwelling together under the same roof with more or less permanency. *Colley v. Colley*, 204 Va. 225 (1963). In *Yane*, the Court noted the definition of cohabitation set forth in *Colley* and opined that parties dwelling under the same roof are precluded from a divorce under § 20-91(9)(a).

Regardless of whether dwelling under the same roof precludes entry of a decree pursuant to § 20-91(9)(a), counsel have not presented corroborated evidence sufficient to establish either the requisite intent under *Hooker* or absence of marital cohabitation. The action is dismissed unless the parties seek to retain it on the docket for future resolution.