## CIRCUIT COURT OF SPOTSYLVANIA COUNTY

Olde Greenwich
Community Council, Inc.

v.

John Saunders
and Lyonne Saunders

September 12, 1991

Case No. C-88-594

By JUDGE WILLIAM H. LEDBETTER, JR.

The focus of this chancery proceeding is the defendant's[1] contention that the homeowners association has lost its right to enforce a building restriction because of repeated violations of the restrictive covenants.

### Facts

The pertinent facts are undisputed. In 1970, the defendant purchased a townhouse in Olde Greenwich subdivision. The conveyance was subject to recorded restrictive covenants applicable to all property in the subdivision. Relevant to this controversy, the covenants provide that "no porch or porch covering . . . or other structure . . ." is allowed unless the plans and specifications are approved by the Community Council's architectural control committee.

---

[1] During the pendency of this litigation, Mr. Saunders, one of the original co-defendants, died. Therefore, all references to "the defendant" in this opinion are to Mrs. Saunders, who is now the sole owner of the property by survivorship.

In 1986, the defendant added a deck to the rear of her townhouse. The deck was topped with some sort of roof. The defendant neither sought nor obtained approval of the deck from the architectural control committee. In late 1987, the defendant enclosed the deck, creating a "Florida room" or "sun room." The room extends about fourteen feet into the rear yard from the second story of the three-story townhouse. It is supported by three six by six posts, or "stilts," and by beams extending from the main structure. It consists of a roof with skylights, gutters and downspout, nine windows, a solid floor, an electrical system, and vinyl siding with trim. The room is accessible from the main structure through a door set into the rear wall in the second story. The exterior of the addition is compatible with the exterior of the townhouse.

The record reveals that Olde Greenwich was developed according to a general scheme or plan. The subdivision consists of individual residential buildings, each containing a number of two-story and three-story row dwelling-units, or townhouses, separated by party walls. Each townhouse has a front and a rear yard. Most of the townhouses have a slab patio and a small storage area at the back door. The original development did not include porches, decks, fences or other structures, except that the developer did build about ten to fifteen wrought iron decks at the request of original townhouse purchasers.

At the time the defendant built her sun room, approximately 180 "technical violations" of the restrictive covenants existed. These violations (called "variances" by the Community Council in a survey done in 1988) include such things as unapproved fences, retaining walls, sheds, doghouses, decks, and enclosed patios. According to the evidence, about twenty-five decks have been built onto the rear of townhouses in the 200-unit subdivision. As noted above, some of the decks were built by the developer; others were added by homeowners -- most of them without the knowledge or approval of the architectural control committee -- at various times during the 23-year history of the subdivision. No one but the defendant has completely enclosed a deck or added a room.

*Status of the Case*

The Community Council instituted this suit shortly after it learned of the sun room, on November 14, 1988. The defendant filed a responsive pleading. The parties engaged in discovery. On November 6, 1989, the court referred the case to a commissioner in chancery. The commissioner took evidence on March 6, 1990, received memoranda of law from counsel, and submitted his report on June 24, 1991. The report recommends that the court compel compliance with the restrictive covenants. The defendant filed exceptions and the court heard arguments on the exceptions on August 19, 1991.

*Decision*

Historically, restrictions upon the free and unencumbered use of land were not favored, and restrictive covenants were strictly construed and reluctantly enforced. Now, such restrictions in residential developments are an accepted part of modern community life. Under the modern view, land use restrictions are regarded as a protection to the property owners in the neighborhood and will be enforced according to the plain meaning of the written language of the covenants as long as the restrictions are reasonable. *See* 3A M.J., *Building Restrictions* sects. 4 and 5; Minor, *The Law of Real Property* § 1044 (2d ed. 1928).

Restrictive covenants will be enforced, in equity, at the suit of any party intended to be benefited by them. In a residential development, those benefited by such restrictions include other property owners in the subdivision and, as in this case, the particular entity designated in the restrictive covenants to enforce the restrictions.

The right to enforce a restrictive covenant may be lost, however, by waiver, abandonment, estoppel, or acquiescence in violations. *See* 20 Am. Jur. 2d, *Covenants* sects. 272 and 273.

The leading Virginia case on the subject is *Village Gate v. Hales*, 219 Va. 321 (1978). There, the defendant erected a low brick wall on her property, enclosing her small front yard, in violation of the restrictive covenants. The restrictions contained a prohibition against fences

and walls in all front and side yards. The architectural control committee brought suit after the defendant refused to remove the wall. The defendant adduced evidence that the subdivision contained several side-yard fences, which likewise violated the covenant in question, but that no action had been taken against the owners of those side-yard fences. The trial court held that the plaintiff had waived the covenant as to side-yard fences by allowing numerous violations. The trial court then reasoned that since side-yard fences are governed by the same covenant as front-yard fences and walls, the covenant as to front-yard fences and walls had been waived or abandoned. The Supreme Court of Virginia reversed. The Court emphasized that the party relying on waiver, abandonment or acquiescence must show that the previous conduct or violations had affected "the architectural scheme and general landscaping of the area so as to render the enforcement of the restriction of no substantial value to the property owners." Reviewing the evidence, the Court concluded that the attractiveness or general scheme of the neighborhood was not affected adversely by construction of the side fences. Consequently, the plaintiff's conduct in refusing to enforce the restrictive covenant as to "harmonizing" side fences did not constitute a waiver. "There having been no waiver of the covenant as to side fences because the general scheme of development has not been altered, it necessarily follows that . . . there has been no waiver of the front fence or wall restriction." This is so, the Court said, even though side-yard fences and front-yard walls are linked irrevocably by the same covenant.

Analogizing the case at bar to the facts and holdings in *Village Gate*, it is clear that the issue here is whether the numerous previous violations of the Olde Greenwich restrictive covenants have affected the scheme and general plan of the neighborhood so as to render the enforcement of this restriction of no substantial value to the property owners in the subdivision. The commissioner decided that they did not have such effect and recommended that the restriction be enforced.

Waiver, abandonment, acquiescence and estoppel are related, if not exactly synonymous, terms. According to most authorities, abandonment connotes an intentional or deliberate decision by residents of a community to

relinquish their interest in the obligation. Except in the rare instance of an express abandonment -- more accurately described as a release -- intent to abandon is indicated by nonverbal acts, namely, violations of the covenants that are so general as to evidence an intention to forego the benefit of the covenant and to frustrate the object of the scheme with the result that enforcement would not substantially benefit the encumbered properties. Where the power to consent to particular structures is reserved to the developer or a committee, such power is not abandoned as to one lot by a consent to buildings on another. *See* 20 Am. Jur. 2d, *supra*, § 272; *Restatement of the Law of Property* § 558.

Waiver, acquiescence and estoppel do not involve intent. Instead, these terms refer to a failure to object to or to take steps against general and continuous violations of restrictions so as to lead property owners to reasonably believe that the restrictions will not be enforced. The failure to act must be with knowledge of the facts upon which the claim of waiver, acquiescence or estoppel is based. The violations must be more than trivial, technical or minor breaches of the covenants. Further, acquiescence in violations does not result in loss of the right to enforce the restriction as long as the character of the community has not changed and the restriction remains of value to the residents. Most states (including Virginia, as reflected in the *Village Gate* decision) hold that this defense applies only where the repeated breaches rise to the level of an abrogation of the purpose of the restriction and a subversion of the original scheme or plan. 20 Am. Jur. 2d, *supra*, § 273.

A commissioner's report is not entitled to the same weight as a jury verdict. Virginia Code § 8.01-610. However, where, as here, the commissioner has taken evidence and has observed the witnesses and heard the testimony firsthand, his findings of fact should be given deference and should not be disturbed unless plainly wrong. *Hill v. Hill*, 227 Va. 569 (1984); *Jamison v. Jamison*, 3 Va. App. 644 (1987). The commissioner, citing *Village Gate* and other appropriate authorities, applied correct principles of law in making his report. His interpretation of the facts to which he applied these legal principles deserves discussion.

The evidence shows that most of the violations that have been tolerated over the years involve fencing: chain link fences, picket fences, stockade fences, lattice fences, a split-rail fence, a retaining wall, and a low "snow fence." The next largest group of violations consists of sheds, mostly metal storage sheds. Three patios have been enclosed or partially enclosed. The list also includes a roof antenna, wooden planters, a chimney attached to the rear of a unit, dog houses, dog pens, a metal awning over a patio, a driveway, and several decks (referred to above).

None of these improvements is in the same category as the defendant's sun room. Although fences, walls, dog pens, and the like may affect the sense of "open spaces" that the developer intended to incorporate, and the metal sheds may be unattractive, those structures do not have the significant effect of blocking air and light from adjacent townhouses as does an enclosed second-story room extending fourteen feet beyond the rear of the building. Even decks do not have a comparable impact. The defendant's neighbors testified that the radical reduction of sunlight, visibility, and air circulation resulting from the addition of the sun room was not noticeable when there was only an open deck there. Similarly, the enclosed patios, which would seem to present a more serious disturbance, are not comparable to this protrusion because the patios are small slabs immediately to the rear of the back door. The dimensions of the slabs are such that they extend into the rear yard no further than the storage area attached to the townhouse. Thus, a screen enclosure of a patio interferes little, if at all, with others' access to light, air, and visibility.

To hold that these fences and other violations have so affected the development scheme of Olde Greenwich "so as to render the enforcement of the restriction of no substantial value" would mean that any townhouse owner in the subdivision could attach practically any structure to his or her townhouse, so long as its appearance is not hideous. For instance, if the covenant cannot be enforced against the defendant's sun room, how could it be enforced against a sun room that extends twenty-eight feet into the rear yard? Or against an addition that extends to all three stories? Or against an addition that doubles

the size of the townhouse and extends almost to the rear property line? Rather than a sun room, why not an additional bedroom, atrium, playroom or gym?

The commissioner concluded that the structure built by the defendant "is unique to the subdivision . . . . By the total enclosure of the deck, including the supplying of electricity for outlets and an overhead light, the defendant in effect added an additional room . . . outside the original structural confines of their common townhouse building." Upon a review of the evidence, the court agrees with the commissioner.

The defendant also raised the related defense of equitable estoppel. The Commissioner correctly reviewed the elements of that doctrine and found that the evidence does not support the defendant's contention that the plaintiff misled her, either by misrepresentation or silence, to change a position to her detriment.

The defendant had a working knowledge of the restrictive covenants. In fact, she participated in surveys of covenant violations, noting "variances" throughout the subdivision. Ironically, it was the 1988 survey, with which she assisted, that generated this litigation.

It is easy to understand how the defendant, when she built the deck in 1986, would have thought that no prior approval of that project was necessary. After all, twenty-five to thirty decks existed in the subdivision, including one in her building, and some of them had been erected by the developer himself. But when she converted the deck to a sun room, creating an enclosed addition to her townhouse that protruded fourteen feet into the backyard and blocked or impeded the flow of air, light, and visibility of her neighbors, she could not have reasonably assumed that the existence of fences, dog houses, open decks, and metal sheds in the subdivision entitled her to build this structure without prior approval.

The defense of estoppel is available to one who is unreasonably harmed by acting in reliance upon conduct of persons entitled to enforce the covenant. Reliance is essential, and it must be reasonable and justified in an objective, not subjective, sense. *See, Restatement of the Law of Property* § 559.

*Conclusion*

The violations established by the evidence do not affect the scheme of Olde Greenwich subdivision so as to render the enforcement of the subject covenant of no substantial value. Those violations have little impact upon homeowners' access to air, light, and visibility as does the defendant's structure. Further, the plaintiff is not equitably estopped from pursuing this effort to enforce compliance with the covenant.

The commissioner's fee is fair and reasonable and will be approved. His recommendation that the fee be borne equally by the parties and his recommendation that each party bear its or her own attorney's fees will be confirmed.

Therefore, the commissioner's report will be approved and confirmed.