## CIRCUIT COURT OF THE CITY OF FREDERICKSBURG

Harrell Builders, Inc.

v.

James Q. Watters, Jr., et al.

March 30, 1992

Case No. CH90–29

BY JUDGE WILLIAM H. LEDBETTER, JR.

In this mechanic's lien suit, the contractor sues to recover the balance due under the construction contract while the owners claim they owe nothing because of deficiencies in the work.

### Facts

On August 30, 1988, the respondents (the Watters) contracted with the complainant (Harrell Builders) to construct three storage warehouse buildings on the Watters' property in Fredericksburg. Under the terms of the contract, Harrell Builders was to install three "monolithic pour" concrete pads to a uniform depth of six inches atop a layer of gravel, a plastic vapor barrier, and reinforcing wire mesh. On the pads, Harrell Builders was to erect prefabricated metal buildings purchased from a specified manufacturer. The Watters would be responsible for site work and the "finishing" (i.e., electrical, plumbing, HVAC, grading, paving) and would obtain all required permits.

The contract price was $127,775.00 payable in four installments. The final installment, $30,490.00, payable upon completion, was never paid. The Watters refused to make that payment, claiming that the work was defective in a number of respects. According to their evidence, their investigations disclosed that no gravel had been

placed under the pads, portions of the concrete pads were "honey-combed," the pads were not poured to the specified thickness, steel columns and beams were not properly aligned, the roofs leaked, bolts were missing, and other deficiencies existed.

Meanwhile, a few weeks before the buildings were completed, the Watters contracted to sell the buildings, along with another building on an adjacent site, for $475,000.00. The contract, dated October 19, 1989, called for the Watters to deliver the buildings in "turnkey" condition with occupancy permits. That transaction closed on April 3, 1990. The purchasers paid the purchase price, took possession, rented out sections of the buildings for storage space, and have not complained about any aspect of the buildings.

## Pleadings and Status of the Proceedings

This suit was instituted on February 20, 1990, to enforce a memorandum of mechanic's lien filed by Harrell Builders on October 27, 1989. The commissioner found that the lien and the suit were timely filed and no exceptions were taken to those findings.

On April 9, 1990, the Watters bonded off the lien pursuant to Virginia Code § 43–70, so that there is $37,000.00 on deposit with the court.

On May 17, 1991, after considerable discovery, Harrell Builders moved for summary judgment arguing, in essence, that the Watters had sustained no damage as a matter of law by virtue of the sale of the property for $475,000.00. The motion was denied.

The case was referred to a commissioner in chancery on June 6, 1991. The commissioner conducted hearings on September 26–27, 1991, and filed his report on February 19, 1992. Both parties took exception to portions of the report.

Arguments on the exceptions were heard on March 18, 1992. This opinion addresses those matters.

## Factual Findings of the Commissioner

The commissioner found that Harrell Builders had breached the construction contract in several respects. For instance, he found that gravel was not properly placed beneath the pads, that the pads were not uniformly six inches thick, that cracks existed in the concrete, that "daylight" was visible around doors, that some of the insulation was missing or loose, and that some bolts were not installed or were improperly fastened.

Next the commissioner turned to the issue of damages. The Watters claimed that it would cost them $22,500.00 to correct the defects and complete the work according to the contract. Harrell Builders contended that the Watters could show no "cost of completion" because they had sold the buildings, without incident, for a profit. The commissioner found that the Watters had paid $225.00 to Datum Environmental, Inc., for concrete test boring; $446.00 for an inspection by an expert, and $500.00 to make corrections in the work. The commissioner recommended that the Watters be given an offset for those damages. He disallowed the Watters' other claims because the Watters will never incur those expenses because remedial steps would be impractical, wasteful and unnecessary, and for other reasons explained in his report.

A commissioner's report is not entitled to the same weight as a jury verdict. However, where, as here, the commissioner has conducted the hearing so that the witnesses have testified before him, his factual findings should not be disturbed unless the record plainly shows that the evidence does not support such findings. *Hill v. Hill*, 227 Va. 569 (1984); *Jamison v. Jamison*, 3 Va. App. 644 (1987). In this case, upon disputed evidence, the commissioner made factual findings and reached conclusions which the court cannot say are plainly wrong. Based upon an independent review of the record, the court finds that the commissioner's factual findings are adequately supported by evidence and to reject them would be an abuse of discretion.

### Legal Principles

The Watters argue that the commissioner failed to apply the correct principles relating to damages. They say that the commissioner improperly minimized their loss by placing too much emphasis on the fact that they sold the buildings and will not make the corrections to Harrell Builders' defective work.

The commissioner correctly stated the legal principles that apply to a building contract breach.

First, the commissioner observed that the fundamental principle upon which the rule of damages is based is compensation, that is, what it will take to make the obligee whole. To reach that objective in a building contract case, the law of damages recognizes alternative measures of damage: the "cost to complete" rule, applied in

most cases, and the "diminution in value" rule. The "cost" rule bases damages on the cost of correcting the defects or completing the work so that the finished product conforms to the terms of the contract. The "value" rule is the difference between the value of the building properly completed according to the contract and the value of the defective structure. Next, the commissioner properly observed that whether to use the "cost" rule or the "value" rule depends on the facts and circumstances of each case. More particularly, he noted, the court must consider the character and extent of the defective construction, whether the corrective measures are necessary to make the building sufficient for the purposes for which it was constructed and whether "unreasonable economic waste" would result from application of the "cost" rule. *See, Mann v. Clowser*, 190 Va. 887 (1950); *Kirk Reid Company v. Fine*, 205 Va. 778 (1965); *Lockhaven Company v. Master Tools*, 233 Va. 537 (1987); 6 Williston on Contracts § 1363; Restatement of the Law of Contracts § 346.

> Where the contractor fails to keep his agreement, the measure of the [owner's] damages . . . is always the sum which will put him in as good a position as if the contract had been performed. If the defect is remediable from a practical standpoint, recovery generally will be based on the market price of completing or correcting the performance, and this will generally be shown by the cost of getting the work done or completed by another person. If the defect is not thus remediable, damages are based on the difference between the value of the defective structure and that of the structure if properly completed . . . . Williston, quoted in *Kirk Reid, supra.*

*Also see* 3A M.J., *Building Contracts* § 30.

Using these rules, the commissioner determined that the proven defects here "in no way diminished the value of the buildings." He found that their remedy was not "necessary to make the buildings sufficient for the purposes for which they were constructed." Therefore, he recommended that the Watters recover, by way of offset, their expenses in curing certain proven deficiencies prior to transfer of the buildings to the third-party purchaser. Those expenses totalled $1,171.00.

Virginia Code § 43–16, which allows an owner to set off against a mechanic's lien his cost of completion, does not modify the law of

damages as it relates to building contracts. The Watters correctly note that in *Henderson and Russell v. Warwick*, 217 Va. 486 (1976), the Court held the owner's cost of completion is a proper setoff even though he has not actually completed the work. However, the commissioner's recommendation is not inconsistent with that rule. He merely observed, correctly, that lack of necessity, along with economic waste, are factors in deciding whether to use the "cost" or "value" rule in determining damages.

Reviewing the record, it is apparent that the commissioner applied correct legal principles to the facts as he found them, and it is further apparent that the commissioner's factual findings are supported by credible evidence and are not plainly wrong. Accordingly, the court is of the opinion that Harrell Builders has established its entitlement to final payment under the contract, in the amount of $30,490.00, less an offset or recoupment in favor of the Watters in the amount of $1,171.00.

In calculating prejudgment interest, the commissioner awarded interest to Harrell Builders on the entire $30,490.00 from December 18, 1989, on the theory that Harrell Builders "was entitled to receive $30,490.00 on December 18, 1989." Then, he calculated prejudgment interest on the Watters' set-off from April 3, 1990, the date the corrective work was done. The court disagrees with that approach. As we have just seen, Harrell Builders was *not* entitled to $30,490.00 on December 18, 1989, but to $30,490.00 *less* the amount of damages incurred by the Watters on account of defective work, $1,171.00. Thus, Harrell Builders was never entitled to anything more than $29,319.00. Interest is due on that amount from December 18, 1989, until paid; the setoff is just that, not a judgment, and bears no interest as such.

### Costs

The commissioner requested a fee of $3,102.50. No exception was taken to the amount requested, and the court finds that it is fair and reasonable.

The commissioner recommends that each party bear his own costs and legal fees, except that the costs of the court reporter and the commissioner be assessed equally against the parties. The court agrees with this recommendation under the circumstances of this case. Thus, one-half of the court reporter's fees, $838.30, and one-

half of the commissioner's fee, $1,551.25, will be assessed against each party.

*Conclusion*

For the reasons explained, the commissioner's report will be affirmed except for the calculation of interest. Harrell Builders will be awarded the sum of $29,319.00 on its mechanic's lien claim, with interest at 8% through June 30, 1991, and at 9% from July 1, 1991.

As noted above, there is money on deposit with the court to satisfy the lien. Counsel will calculate, based on the rulings above, the precise amounts to be disbursed by the court; the clerk will not be responsible for determining the distribution amounts except as they are clearly stated in the decree. The decree must also allow for deduction of the clerk's fees.